**UNITED STATES of America**

v.

**Scott WILLIAMS.**

**EBD No. 79–353.**

United States District Court,
D. Massachusetts.

Oct. 5, 1979.

Robert B. Collings, 1st Asst. U.S. Atty., Chief, Crim. Div., Boston, Mass., for the United States.

William A. Brown, Boston, Mass., for defendant.

Memorandum

KEETON, District Judge.

I.

Scott Williams is in custody following arrest pursuant to the provisions of 18 U.S.C. § 3184.

The warrant was issued on September 26, 1979 on the basis of a telegraphic communication from Canadian authorities to the United States Department of State, inform-ing this Government that Williams had been charged with the crime of conspiracy to import a narcotic in violation of Section 423(1)(D) of the Criminal Code of Canada.

At a time before the foregoing communication between governments, defendant had been arrested on a charge filed in the United States District Court for the Eastern District of New York, based on the same events. In relation to the charge in the Eastern District of New York, defendant has been released from custody on a bond without surety.

At a hearing on September 28, 1979, this court was persuaded that precedents disallowed release on bail absent "special circumstances" as that phrase is used in precedents construing 18 U.S.C. § 3184 and predecessor statutes. An order was then entered denying the request for bail but without prejudice to defendant's opportunity to move for bail and present proof and argument in support of a finding of "special circumstances." Such a motion having been presented, and the matter having been heard and considered, the court concludes that bail should be allowed.

II.

Relevant portions of 18 U.S.C. § 3184 are set out immediately below. The bracketed numbers are not part of the statute. They are inserted to facilitate reference in this opinion.

[1] Whenever there is a treaty or convention for extradition . . . any . . . judge of the United States . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, [2] issue his warrant for the apprehension of the person so charged, that he may be brought before such . . . judge . . . to the end that the evidence of criminality may be heard and considered. [3] If on such hearing, he deems the evidence sufficient to sustain the charge

under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, [4] that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; [5] and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

The seminal decision of the Supreme Court, *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), counsels against the granting of bail in extradition matters. In that case, the Court based its decision on the statutory directive, now carried forward in part [5] of the foregoing quotation from 18 U.S.C. § 3184, declaring that a judge

. . . shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

190 U.S. at 62, 23 S.Ct. at 786. Part [5] of the statute, in which this phrase appears, applies to a commitment to a proper jail after a hearing, determination, and certification that the person in custody is subject to extradition for the charge under the applicable treaty. In *Wright v. Henkel, supra*, the Court appears in the following passage to distinguish the circumstances existing when such a hearing has not been held:

Not only is there no statute providing for admission to bail in cases of foreign extradition, but § 5270 of the Revised Statutes is inconsistent with its allowance *after* committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.'

190 U.S. at 62, 23 S.Ct. at 786 (emphasis added).

The phrase "to the proper jail, there to remain until such surrender," has not been construed, however as an absolute prohibition against bail. See, e. g., *Beaulieu v. Hartigan*, 554 F.2d 1 (1st Cir. 1977). Instead it is said, bail is to be allowed only under "special circumstances." *Id.* at 1–2. See also, *In re Mitchell*, 171 F. 289 (S.D.N.Y.1909) (per L. Hand, J.).

Should questions regarding bail following arrest under a warrant such as is described in part [2] of § 3184 nevertheless be governed by precedents concerning bail following a commitment in accordance with part [5] of the statute?

At the hearing of September 28, 1979, the court was persuaded that precedents have answered this question affirmatively. On closer study of § 3184 and the precedents than was possible within the limited time of the hearing of September 28, the court is persuaded that decisions of the Supreme Court and the First Circuit do not address this question; instead they speak to the law governing bail after a hearing, determination and certification under part [5] of § 3184. Some previous District Court decisions appear to go farther and apply the same law regarding bail after arrest under part [2] of § 3184. *See In re Klein*, 46 F.2d 85 (S.D.N.Y.1930); *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y. 1912). These decisions may be questioned, however, since they fail to note the distinction, observed by the Supreme Court in *Wright v. Henkel*, between bail before and after a hearing of the kind described in part [3] of the statute.

This distinction is significant. After such a hearing and commitment to jail for the purpose of being held for delivery to a foreign authority without further judicial action, it is very likely that bail will be inappropriate because the delivery is to be effected as soon as is feasible. In contrast, before such a commitment, no judicial determination has been made that delivery to the foreign authority will be lawful.

The United States, nevertheless urging that bail is inappropriate even before such a hearing regarding lawfulness of the pro-

posed delivery, argues here that despite the acknowledged consistency of release on bail in this instance with the clear policy of American law favoring bail pending trial, this court is forbidden to allow such release, absent "special circumstances," because of overriding treaty obligations between the United States and Canada and a statutory mandate to courts to honor those obligations. Precedents cited include *Wright v. Henkel*, supra, *U. S. ex rel. McNamara v. Henkel*, supra, *Jimenez v. Aristeguieta*, 311 F.2d 547 (5th Cir. 1962), cert. denied sub nom. *Perez Jimenez v. Hixon*, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1962), reh. den. 374 U.S. 858, 83 S.Ct. 1867, 10 L.Ed.2d 1083 (1962), aff'g further order of district court, 374 F.2d 649 (5th Cir. 1963), *Beaulieu v. Hartigan*, supra.

Defendant cites numerous instances in which bail has been allowed pending extradition. *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973), cert. dismissed 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) (district court granted bail pending commitment hearing); *Schonbrun v. Dreiband*, 268 F.Supp. 332 (E.D.N.Y.1967) (court released defendant on personal recognizance pending commitment hearing); *Wacker v. Beeson*, 256 F.Supp. 542 (E.D.La.1966), aff'd sub nom. *Wacker v. Bisson*, 370 F.2d 552 (5th Cir. 1967), cert. denied 387 U.S. 936, 87 S.Ct. 2063, 18 L.Ed.2d 999 (1967) (bail granted pending commitment hearing); *In re Extradition of D'Amico*, 177 F.Supp. 648 (S.D. N.Y.1959) (bail granted after commitment hearing pending determination of issues raised by habeas corpus petition). None of these cases, however, explicitly challenges the precedents on which the government relies.

Defendant responds that the precedents cited by the government can be distinguished because they are concerned with arrest after an order of commitment.

In the present instance, in contrast, the defendant is in custody under provisional arrest.[1] The hearing to determine whether valid grounds are established for commitment is scheduled for October 30, 1979, to allow time for the formal communications from Canadian to American authorities to work their way through diplomatic channels while defendant—if the government prevails on the present motion—remains in custody. Thus, if the government's position is sustained, we have the extraordinary spectacle of telegraphic communications to effect arrest, followed by reversion to the more genteel pace of diplomatic pouches while the defendant is deprived of his liberty for 30 days or more, without any showing and determination of reasonable grounds for commitment, and without an opportunity to show that his attendance at that hearing can be reasonably assured by bail. Certainly no provision of the relevant treaty explicitly commands such an intrusion on personal liberty. The government's argument is that this result is implicitly required by the overriding interest in our national commitment to fulfilling the obligations of our treaty with a sister nation for extradition in appropriate cases.

Among the underpinnings of this argument are the premises that our treaty obligations with Canada include a commitment to extradition on these terms and that 18 U.S.C. § 3184 directs that proceedings in United States District Courts be in conformity with that commitment. Are these premises sound?

---

1. Article XI of the Treaty on Extradition Between the United States and Canada, March 22, 1976, 27 U.S.T. 985–1021, TIAS No. 8237, provides:

(1) In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

27 U.S.T. at 991. A person provisionally arrested can be held a maximum of forty-five days, after which a hearing must be held or the person is entitled to be released.

## III.

Counsel have not cited nor has the court found any treaty provision, or any constitutional or statutory provision, explicitly directing the result for which the government argues. As stated above, the government's argument is that a directive to courts to reach this result is implicit in the treaty obligations for extradition and in the statutory provisions, in 18 U.S.C. § 3184, regarding custody pending consideration of a request for extradition. This court, it would follow, must not be moved by the shocking contrast between the fundamental policy of American criminal law favoring bail[2] and the policy against bail thus attributed to treaty obligations and implementing legislation.

One should not lightly attribute to the law of a sister nation, and to the law jointly made in treaties between our nations, a policy in such sharp contrast with our own national policies of protecting individual liberty and presuming innocence until conviction. Canada and the United States have a heritage of constitutional protection of individual liberties growing from historic roots that we share in common. This common heritage is at least good reason for skepticism about the assertion that actions of the courts of either nation consistent with its own protections of individual liberty would be viewed by the other as disrespectful of its international commitment to extradition. We are, after all, two nations both historically committed to justice between individuals and their governments as well as justice between nations.[3]

■ Moreover, the Treaty itself provides additional support for the proposition that the extradition treaty does not require that procedural safeguards be abandoned in the fulfillment of its obligations by the contracting parties. Article VIII unequivocally states that:

> The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought *shall have the right to use all remedies and recourses provided by such law.*

27 U.S.T. at 990 (emphasis added). This court concludes that the right to be free on bail is a "remedy and recourse" provided by our law. The "traditional right to freedom before conviction permits the [accused] unhampered preparation of a defense, . . ." *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951).

The context of the matter now before this court is thus one of, first, a common commitment of the United States and Canada to individual rights, both in internation-

2. Although the Bail Reform Act of 1966, 18 U.S.C. § 3146, is not applicable to this case, its legislative history reiterates the fundamental policy of American criminal law favoring bail:

> The purpose of this Act is to revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest.

See 1966 U.S. Code Cong. & Admin. News, p. 2293. Canada's own Bail Reform Act of 1972, as amended by the Criminal Law Amendment Act, 1975, S.C. 1974–75–76, c. 93 set out to explicitly state the approach to be taken by its judicial officers in admitting an accused to bail and the burden of proof on the matter of bail. The general rule is that an accused person must be released simply upon giving his written undertaking to attend court as required for the purposes of his trial. This form of release on undertaking does not involve any money or debt aspect; it is simply a solemn promise by the accused to attend court, wilful violation of which is an offense. See J. Scollin, *Pre-Trial Release* (1977). However, in a matter under §§ 4 or 5 of the Narcotic Control Act or the offense of conspiring to commit such an offense (which the court assumes is applicable) the judicial officer is required to order the accused kept in custody unless the accused shows cause why his detention is not justified. See C. M. Powell, *Arrest and Bail in Canada* (2d ed. 1976).

3. This historical commitment is further supported by more recent evidence such as both countries' support of human rights through the United Nations. Both countries' delegations supported and voted for The Universal Declaration of Human Rights and The Covenants on Human Rights, adopted by the U.N. General Assembly on Dec. 10, 1948; Article IX of which provides "No one shall be subjected to arbitrary arrest, detention, or exile."

al undertakings and in national law, and, second, a lack of any explicit directive in treaty, statute, or precedent that this court should require that a person be held without bail, even before a hearing to determine whether he should be committed. In this context, rather than showing due respect for the mandates of international and national law, this court would show insensitivity to fundamental aims of the law of both nations were it to infer that treaties, statutes, and precedents have somehow implicitly directed that defendant be held without bail in such shocking contrast with the way another United States court has determined that persons shall be treated, in relation to charges under American law arising from the same events.[4]

Canada and the United States, in common, have a tradition of administration of justice vesting prosecutorial functions in the executive branch and adjudicatory functions in a separate judicial branch. When bail is sought before a judicial hearing of the type described in part [3] of § 3184, no judicial determination has been made by a judicial officer of either government. To deny a hearing to determine whether bail is appropriate to secure attendance at that hearing, whenever it may be held, is to act inconsistently with a basic principle of the law of both nations requiring judicial, not merely executive action, before deprivation of liberty of an individual on a charge of crime. Indeed, in the normal situations not governed by provisional arrest, Article IX(3) of the Treaty requires judicial action before the request for extradition can be acted upon:

4. See n. 5 infra.

5. The stipulation, developed during colloquy in open court, was in substance as follows:

MR. BROWN: The government and I have entered into a stipulation with respect to facts and I would ask Mr. Collings to read it into the record to the Court at this time.

. . . . .

MR. COLLINGS: [One] That on September 10, 1979 when the defendant Scott Williams voluntarily appeared before Magistrate Kadon in the Eastern District of New York . . . on a domestic charge. Mr. Brown, the defendant's attorney, had a conversation with the

When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

27 U.S.T. at 990.

■ For these reasons, this court construes § 3184 as not intended to preclude bail in a case in which a person is held under a warrant for provisional arrest before a hearing to determine whether there is a valid basis for commitment. This conclusion is supported either (1) by reading the statute as allowing the fact that the arrest is "provisional" to be taken into account as a factor of significant weight in determining whether "special circumstances" exist or (2) by reading the statute as not directing application of a requirement of "special circumstances" to provisional arrest. The present case presents no need for choice between these two propositions. In either event, the present case is an appropriate case for bail.

The court finds "special circumstances" in the present case for the additional reason of disparity that would occur, if bail were not granted here, between the treatment of persons sought to be extradited for participation in the same set of events. This finding is based on stipulated facts[5] offered at the hearing of October 4, 1979.

Assistant United States Attorney in the Eastern District of New York who was handling the domestic case. . . . During which the Assistant United States Attorney said that when the extradition papers were received the defendant Scott Williams would be allowed to surrender on a telephone call to his attorney and that the same bail, which at that time was . . . $50,000 without surety. . . . That the Assistant United States Attorney was speaking at a time when it was anticipated that the extradition proceedings regarding Scott Williams would be held in the Eastern District of New York and that he was speaking at a time when he was unaware that the grant of

An order for release on bail will be entered.

bail in extradition cases was not subject to the Bail Reform Act but subject to different standards.

Two, that the defendant's brother, Glenn Williams, surrendered in the Southern District of New York on the identical extradition offense as the defendant is currently charged with in this district and was continued on his $5,000 deposit bail.

MR. BROWN: Yes, his bail is $100,000, $5,000 surety.

MR. COLLINGS: Deposit?

MR. BROWN: Yes.

MR. COLLINGS: And this occurred on September 28, 1979. It is further stipulated that the government in the Southern District of New York opposed bail for Glenn Williams but the bail was granted over the government's objection.

Three, that the third person, i. e., Robert Yeomans, . . . a Canadian national, sought to be extradited to Canada, whose request for provisional arrest was made in the same note from Canada as the request for provisional arrest of Glenn and Scott Williams, is currently a fugitive and has not been able to be located. He had previously been arrested and bailed in the Eastern District of New York on the same domestic charges as were Scott and Glenn Williams. The domestic charges against the three in the Eastern District of New York either have been or will be dismissed by the government.