**In the Matter of EXTRADITION OF Robert Henry RUSSELL.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Henry RUSSELL, Defendant-Appellant.**

**No. 86–2576.**

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1986.

Robert J. Sussman, Edward L. Jensen, Houston, Tex., for defendant-appellant.

Roger Yochelson, Atty., Dept. of Justice, Office of Intern. Affairs, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, DAVIS, and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

In May 1986, the United States Attorney, acting on behalf of the Republic of Colombia, filed a complaint in the U.S. District Court requesting an arrest warrant for Robert Henry Russell pursuant to the provisional arrest clause in Article 11 of the Extradition Treaty between the United States and the Republic of Colombia (the "Treaty"). The U.S. Attorney alleged he had information that Russell had been charged with violating Articles 220 and 356 of the Colombian Penal Code (Fraud and Falsehood of a Private Person in Public Documents). The magistrate issued a warrant and federal marshals arrested Russell the same day. Russell is now confined in the Harris County Jail. The charges arise out of a transaction in which approximately $13 million was transferred from a Colombian government account at the Chase Manhattan Bank in London.

Upon Russell's motion, the magistrate held a hearing a week later at which the magistrate denied Russell's request for bail and ordered his continued confinement pursuant to Article 11 of the Treaty. In July, the U.S. District Court for the Southern District of Texas denied Russell's application for a writ of habeas corpus, 647 F.Supp. 1044. Russell appeals that denial.

### Standard of Review

The scope of *habeas corpus* review of a magistrate's extradition order is quite narrow. Such review is limited to determining "whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty."

*Escobedo v. United States,* 623 F.2d 1098, 1101 (5th Cir.) (quoting *Fernandez v. Phillips,* 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925)), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980). That standard applies to the extradition hearing itself and not to the pre-hearing provisional detention at issue here. Nevertheless, the district court adopted that standard to review Russell's provisional detention, and we approve that approach. As a preliminary matter, the district court found that "the Magistrate had jurisdiction under 18 U.S.C. § 3184, in that a treaty did, in fact, exist, and a complaint had been made under oath charging [Russell], found within [the magistrate's] jurisdiction, with having committed within the jurisdiction of Colombia a crime, which was an offense covered by the Treaty." Russell does not challenge those findings.

### Bail

■ Bail should be denied in extradition proceedings absent "special circumstances." *See Wright v. Henkel,* 190 U.S. 40, 62–63, 23 S.Ct. 781, 786–87, 47 L.Ed. 948 (1903); *Ha Yau-Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981); *United States v. Williams,* 611 F.2d 914, 915 (1st Cir.1979). "Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case." *Beaulieu v. Hartigan,* 554 F.2d 1, 2 (1st Cir.1977).

Russell cites two district court cases for the proposition that granting bail has become the rule rather than the exception. In one of those cases, however, the appellate court vacated the district court's grant of bail and on remand cautioned the district court to apply the "special circumstances" test. *See id.* The other case suggests that "there may be an eighth amendment question when American citizens are held without bail in advance of a formal extradition request and without a showing of exigent circumstances." *United States v. Messina,* 566 F.Supp. 740, 745 (E.D.N.Y.1983). *Messina* cited the district court opinion in *Beaulieu* as well as another district court

case for the proposition that the "special circumstances" test of *Wright* may be constitutionally infirm. *Id.* Both cases, however were reversed on appeal and the appellate court in each instance reiterated the "special circumstances" test. *Beaulieu*, 554 F.2d at 2, *vacating in pertinent part* 430 F.Supp. 915 (D.Mass.1977); *Williams*, 611 F.2d at 914–15, *rev'g* 480 F.Supp. 482 (D.Mass.1979). We adhere to the traditional approach that absent special circumstances bail should be denied pending an extradition hearing.

The district court applied the "special circumstances" test in reviewing the magistrate's decision not to grant bail and concluded that "there was ample evidence to support the Magistrate's determination that 'special circumstances' did not exist such as to justify bail...." Russell contends that there are four "special circumstances" that justify granting bail: (1) pending civil litigation; (2) the complexity of the pending extradition proceedings and the criminal trial itself in Colombia; (3) severe financial and emotional hardship for himself and his family; and (4) the fact that Russell is not a flight risk.

■ The district court examined each of these circumstances. (1) The district court determined that "[a]mple time remains for [Russell] to consult with his attorneys as to that pending litigation. [ (2) Russell] also has ample time in which to consult with his attorneys on the matter at hand, and to guide their investigative efforts. His personal participation in these matters is not required." (3) The district court agreed with the magistrate that financial and emotional hardship was present in almost all cases and therefore did not constitute a "special circumstance." (4) Being a tolerable bail risk is not in and of itself a "special circumstance." *See Williams*, 611 F.2d at 915. Moreover, there was considerable evidence indicating that Russell is not a tolerable bail risk. For example, Russell could easily transfer his business to another country; he has no financial incentives to stay in Houston; he is an experienced pilot and has travelled extensively across international borders; and Russell's co-defendant lives in Austria, which has refused

extradition. The district court thoroughly considered the magistrate's decision to deny bail in light of the "special circumstances" test and the evidence at the hearing. We agree with the district court's analysis.

### *Probable Cause*

Russell makes two arguments: first, that Article 11 is unconstitutional on its face, because it provides for the arrest of an American citizen without probable cause and second, that his arrest and detention are not based on probable cause and thus violate his fourth amendment rights.

Some cases have questioned the constitutionality of a treaty that permitted provisional arrest without a showing of probable cause. *See, e.g., Caltagirone v. Grant*, 629 F.2d 739, 748 (2d Cir.1980). Those cases simply construed the treaty in question to require probable cause. *See id.* Assuming without deciding that the Treaty requires a showing of probable cause to support a provisional arrest before an extradition hearing, we agree with the district court that the magistrate had enough evidence before him to show probable cause to detain Russell.

■ Even *Caltagirone*, which questioned the constitutional propriety of a provisional arrest without probable cause, recognized that the evidence at the provisional arrest stage could be informal. *Caltagirone*, 629 F.2d at 747 (contemplating a provisional arrest solely on the basis of telephonic exchanges). In addition, several cases have approved the use of a complaint based on information and belief rather than personal knowledge. *See Yordi v. Nolte*, 215 U.S. 227, 232, 30 S.Ct. 90, 92, 54 L.Ed. 170 (1909); *Grin v. Shine*, 187 U.S. 181, 193, 23 S.Ct. 98, 103, 47 L.Ed. 130 (1902). At the hearing, the magistrate had before him the sworn complaint of the U.S. Attorney, which described the transaction in which Russell is charged to have defrauded the Colombian government; letters from Russell to the Consul General of Colombia in Houston that explained without denying Russell's participation in the alleged trans-

action; a letter from the Colombian Consul in response to Russell's letter; Russell's testimony that he participated in the transaction at issue, that for his services he received $200,000, which is currently frozen in a Swiss bank account, and that the Chase Manhattan Bank in London was suing him in connection with the same transaction. The district court concluded that the magistrate had a reasonable basis for determining that probable cause existed. In light of our very limited role in reviewing the record, we agree.

### Urgency Determination

Russell argues that the magistrate did not require evidence of "urgency" as required by Article 11 of the treaty. The district court found that the "Magistrate had a full evidentiary hearing on the issue of Petitioner's detention, which included taking evidence and testimony on every conceivable aspect of the case, including the issue of urgency...." Again, we agree.

The determination of Colombia that a case is "urgent" "is due deference as a matter of comity.... [I]n addition, ... considerable weight [attaches] to the judgment of the United States, given its foreign affairs interest in the matter." *Messina*, 566 F.Supp. at 745. " '[U]rgency' is not merely temporal in nature. Rather, the term involves other considerations including importance to the country seeking extradition and foreign policy concerns of the United States." *United States v. Leitner*, 784 F.2d 159, 161 (2d Cir.1986). Russell tries to distinguish those cases based on the fact that the crimes at issue involved violence. The reasoning of both cases, however, indicates that the question of "urgency" turns on the perceptions of the requesting and the requested countries. Here both Colombia and the U.S. think that this case is urgent. Furthermore, the magistrate had before him a description of the offense with which Russell is charged and some evidence that Russell may be a flight risk.

Russell argues that the warrant for his arrest was issued in Colombia almost two years before Colombia requested his arrest in the U.S. " '[U]rgency' [is] less related to immediacy than to the importance of the case given the nature of the crime, the risk of flight, and the interests of the countries in extradition. The broader interpretation of the term that takes into account the interests of the treaty parties seems the appropriate one." *Leitner*, 784 F.2d at 161.

### Article 8

Article 8 provides in part: "Neither Contracting Party shall be bound to deliver up its own nationals, but the Executive Authority of the Requested State shall have the power to deliver them up if, in its discretion it be deemed proper to do so." Russell contends that "the preliminary language of Article 8 'that neither contracting party shall be bound to deliver up its own nationals' preempts any obligation and therefore any authority to make an extradition decision." We reject Russell's argument. Article 8 clearly provides that extradition of nationals is in the discretion of the executive.

### Conclusion

Finding merit in none of Russell's arguments we affirm the district court.

**AFFIRMED**