In the Matter of the EXTRADITION OF Anne HAMILTON–BYRNE and William Eric Hamilton–Byrne.

No. 93 Cr Misc 1 (VLB).

United States District Court, S.D. New York.

Sept. 8, 1993.

Kerry A. Lawrence, Asst. U.S. Atty., White Plains, NY, for U.S.

John J. Tigue, New York City, for Byrnes.

**MEMORANDUM**

VINCENT L. BRODERICK, District Judge.

I

This is an appeal from revocation of bail (not yet made) of Anne Hamilton–Byrne and William Eric Hamilton–Byrne ("the Byrnes"), who are sought for extradition by the Government of Australia on charges of conspiracy to commit perjury involving false documents and common law conspiracy to defraud. The bail application was heard before United States Magistrate Judge Mark D. Fox pursuant to 18 U.S.C. 3184. The present memorandum explains my declination to disturb the denial of bail by United States Magistrate Judge Mark D. Fox.

The charges against the Byrnes grow out of alleged falsification of birth certificates to retain children fraudulently brought into a cult under the guise of being natural children of the Byrnes. The Byrnes had lived in Australia for a significant period; Mrs. Byrne is an Australian citizen. The Byrnes' United States visas have expired and they are here illegally. They had made arrangements to travel to Great Britain which has no relevant extradition treaty with Australia.

An extradition complaint was filed by the United States Attorney on behalf of the Government of Australia dated June 3, 1993, pursuant to which the Byrnes were arrested on June 4, 1993 and brought before United States Magistrate Judge Mark D. Fox, who initially denied bail on June 17, 1993. On June 23, 1993 I affirmed Judge Fox's ruling. I indicated, however, that the complaint as initially filed must promptly be supplemented with more detailed information if the Byrnes were to continue to be held without bail. I suggested that unless affidavits were submitted before Judge Fox within two weeks sufficient to support holding the Byrnes for the interim period pending a decision on final extradition, Judge Fox might appropriately reconsider denial of bail.[1]

1. I suggested discussions between counsel as to whether electronic monitoring and other assurances of the Byrnes' amenability to extradition could be devised. In doing so, I also expressed concern about the cost to the United States of maintaining detainees in custody if less expen-

No such affidavits having been submitted, on July 7, 1993 Judge Fox set conditions for release of the Byrnes. On July 9, 1993, before these conditions were met, the United States Attorney presented to Judge Fox papers furnished by the Government of Australia, consisting of approximately 400 pages, including affidavits by an Australian police officer and an Australian solicitor together with numerous attached exhibits. Judge Fox found that these materials provided sufficient evidence to hold the Byrnes in custody pending completion of extradition proceedings and revoked bail.

Article V of the 1976 extradition treaty between the United States and Australia provides that extradition "shall be granted only if the evidence is found sufficient, according to the laws in the territory where the person whose extradition is requested is found, either to justify his trial or committal for trial if the offense with which he is charged or its equivalent" had been committed in that territory.

This provision requires use of the same test as would be applicable to holding a domestic defendant for further proceedings, i.e. that there must be probable cause to believe that an offense was committed and that the defendant committed it. Fed. R.Cr.P. 4.

For the reasons which follow, I have declined to upset Judge Fox's decision, which I conclude is neither clearly erroneous nor contrary to law.

## II

■ The charges made by the Australian Government qualify as grounds for extradition under the 1976 United States—Australia extradition treaty, Article II, 27 UST 957, 960, TIAS 8234, which covers among other offenses:

"an offense relating to ... forgery," ¶ 20

"perjury; subornation of perjury; conspiring to defeat the course of justice," ¶ 21.

Creation or use of false birth certificates, which Australia treats as perjury, and conspiracy to do so in order to take control of young people based on such false certificates, clearly fall within these categories.

The underlying facts alleged by the Government of Australia are also covered by further provisions of Article II of the 1976 extradition treaty and provide further grounds for extradition, see generally *Collins v. Loisel*, 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922); *Messina v. United States,* 728 F.2d 77 (2d Cir.1984):

"... procuring, or trafficking in ... young persons for immoral purposes," ¶ 7

"... kidnapping; child stealing; abduction; false imprisonment," ¶ 10

"... obtaining any property, money ... by false pretenses or other form of deception," ¶ 15

A 1990 protocol to the treaty, printed in S. Treaty Doc. 102–23, 102d Cong, 2d Sess (1992), covers an offense "punishable under the laws of both Contracting Parties by deprivation of liberty of more than one year, or by a more severe penalty." In Australia, perjury carries a maximum penalty of five years; the penalty for common law conspiracy is unlimited depending on the circumstances ("at large"). Counterparts in the United States at the federal level alone include perjury as such (18 U.S.C. 1621, authorizing imprisonment for five years), mail fraud (18 U.S.C. 1341, authorizing the same penalty; use of the mails is a purely jurisdictional element, irrelevant here); use of false statements within the jurisdiction of a governmental agency (18 U.S.C. 1001, authorizing the same penalty; the counterpart of involvement of a governmental agency would be use of birth certificates to support child custody).

## III

■ The Australian Government's papers show acts in furtherance of the alleged crimes in Australia. There is nothing in the

sive but effective assurances of appearance could be devised.

Such discussions were unsuccessful and I am not prepared to hold that measures short of

detention will in fact be adequate to assure attendance of the detainees.

290

treaty or United States law to indicate that all phases of an offense must be completed within a single jurisdiction; no such principle in Australian law has been, or is likely to be, found. Otherwise firing a rifle shot across a national boundary to kill a victim on the other side, for example, would permit the act to be engaged in with impunity. See generally *Alfadda v. Fenn*, 935 F.2d 475 (2d Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991); *United States v. Duma*, 228 F.Supp. 755 (SDNY 1964); Karmel, "The Second Circuit's Role in Expanding the SEC's Jurisdiction Abroad," 65 St. John's L Rev 743 (Summer 1991); Comment, 16 Fordham Int'l L.J. 159 (1992–93).

## IV

■■■ The crimes charged and facts alleged, the substantiation now provided by the affidavits submitted to Judge Fox, together with the additional circumstances that the Byrnes have overstayed their visa in this country and had made arrangements to fly to Great Britain which has no applicable treaty with Australia confirm the urgency of Australia's application under Article 8 § 1 of the treaty, and indicate a likelihood of flight (also found in Judge Fox's decision of June 16, 1993 which I have adopted and which is attached to this memorandum order) which constitutes a basis for denial of bail. See *Caltagirone v. Grant*, 629 F.2d 739, 744 n. 10 (2d Cir.1980); *United States v. Messina*, 566 F.Supp. 740 (E.D.N.Y.1983).

## V

There is also some support for necessity of a finding of urgency in extradition. See *Matter of Extradition of Pazienza*, 619 F.Supp. 611, 612 (SDNY 1985) and cases cited. The United States Magistrate Judge held on June 16, 1993 in a memorandum which I adopt and make part of this memorandum order that this element had been satisfied.

■■■ The nature of the crimes charged and the support of both the United States Attorney and the Government of Australia furnish that element if required. Substantial although not necessarily conclusive weight must be accorded the judgments of the Exec-

utive branch in regard to a treaty requirement having diplomatic as well as juridical elements such as "urgency." See *Jimenez v. Aristiquieta*, 314 F.2d 649 (5th Cir.), *cert. denied* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963).

## VI

Because of the importance of mutual international comity, the difficulty of producing witnesses in a distant location on short notice, and the seriousness of crimes for which extradition is authorized, bail pending extradition is traditionally granted only under special circumstances. *United States v. Leitner*, 784 F.2d 159 (2d Cir.1986); *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir.), *cert. denied* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981); *Beaulieu v. Hartigan*, 554 F.2d 1 (1st Cir.1977); *In re Mitchell*, 171 F. 289 (SDNY 1909).

This does not mean that persons present in the United States can be arrested and imprisoned for substantial periods merely upon the request of a foreign government if the requesting country and the detainee had little or no contact or if the kind of substantiation required domestically to hold a defendant under Fed.R.Crim.P. 4 was not promptly forthcoming.

■■■ Special circumstances may include reasons to believe that the underlying charges cannot be supported as required by treaty provisions or due process under the applicable standard; they may also include the presence of an inherent deficiency or impropriety in the charges or procedure. See Rule 4, Federal Rules of Criminal Procedure. Special circumstances might also be found if a health emergency could be established which could only be treated while a detainee was on bail. See *Salerno v. United States*, 878 F.2d 317 (9th Cir.1989); *United States v. Taitz*, 130 F.R.D. 442 (SD Cal.1990). None of such special circumstances appears to exist here.

The Byrnes point to health problems which may, indeed, be serious. That is often true with regard to defendants in custody in domestic as well as extradition cases. Were health problems a basis for release, both

actual and feigned illnesses could rapidly empty custodial facilities. Nothing convinces me that the Byrnes' health problems are unique or cannot be dealt with while in custody. The Byrnes have through their submissions informed the United States of the nature of their health problems. The United States Attorney has the responsibility to see that all necessary medical care is provided, and it appears that the United States Attorney is prepared to respond to requests by the Byrnes or their counsel for any feasible steps in this regard.[2] These fact-intensive aspects of supervision of the Byrnes' detention should, in any event, be considered initially by the United States Attorney and if necessary with the Magistrate Judge.

## VII

■ It is axiomatic that courts possess inherent power under Article III to insure that their authority is not abused contrary to constitutional guarantees; otherwise they would be acting contrary to the Constitution. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). And if public policy might be offended by a request by a foreign government, courts may consider staying their hands. See Comment, 16 Fordham Int'l L.J. No. 3 at 895 (1992–93).

I find nothing in the procedure or substance of the application before me which would be invalid or improper under the Constitution, under the applicable treaty, or in the normal course of processing domestic cases. Were extradition sought on thin charges or of persons having a tenuous connection with the requesting state, strict scrutiny would be appropriate. None of these factors is present here.

In finding no abuse of extradition, I take into account that both the Byrnes concededly lived in Australia for a significant period before coming to the United States and that the wife is an Australian citizen. See Note, 12 Harv.L.Rev. 532, 538 (1899). This case does not involve extradition of United States citizens or citizens of a third country to a nation with which the detainees had minimal contacts. Nor does it involve what could be considered political crimes or artificial charges pursued for political purposes which might raise First Amendment issues.

SO ORDERED.

FOX, United States Magistrate Judge.

The Government instituted this proceeding by an *ex parte* application for an arrest warrant pursuant to 18 U.S.C. § 3184. The complaint, made under oath by an Assistant United States Attorney, charges that the detainees, a married couple, have been charged with offenses in Australia and that the Government of Australia will present a demand for extradition pursuant to the 1974 extradition treaty and protocol (1990 amendment to the treaty) currently in effect between Australia and the United States. The detainees have moved to dismiss the arrest warrant.

Article VIII of the protocol, which replaced Article XII of the treaty, provides in pertinent part:

(1) In case of urgency, either Contracting Party may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the Department of Justice in the United States and Attorney-General's Department in Australia. The facilities of the International Criminal Police Organisation (Interpol) may be used to transmit such a request.

(2) The application for provisional arrest shall contain:

(a) a description of the person sought;

(b) the location of the person sought, if known;

(c) a brief statement of the facts of the case, including, if possible, the time and location of the offence;

(d) a description of the laws violated or alleged to have been violated and, where

---

**2.** The Byrnes have not shown specific requests made initially orally and followed up in writing addressed to the United States Attorney requesting reasonable medical steps which were denied. Nor have the Byrnes sought any order from the Magistrate Judge specifying treatment which they contend must be provided and which has been denied by the Government.

applicable, the penalty which may be imposed;

(e) a statement of the existence of a warrant of arrest or finding of guilt or judgment of conviction against the person sought; and

(f) a statement that a request for the extradition of the person sought will follow.

(3) On receipt of the application, the requested State shall take appropriate steps to secure the arrest of the person sought. The requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

■ The detainees assert that the warrant issued by the undersigned is invalid because the complaint contains nothing meriting a finding or conclusion that this is a "case of urgency". As a necessary logical corollary, they argue that pursuant to Article VIII of the protocol, the Court must make a finding of urgency prior to issuing the warrant for provisional arrest. The Government responds that this issue is not justiciable.

The Court's research has been unable to locate controlling authority on the issue.[1] In *Caltagirone v. Grant,* 629 F.2d 739 (2d Cir. 1980), a case involving the extradition treaty between the United States and Italy, the Court observed:

Judge Cannella also deferred to Italian practice in rejecting Caltagirone's argument below that language in Article XIII—"In case of urgency"—requires the Government to show urgency before securing a warrant, and that no such urgency was shown here. Judge Cannella decided that the Government of Italy in applying for the warrant must have found present whatever urgency was required under Article XIII, and he refused to review its determination. While we have reservations concerning Judge Cannella's reluctance to review, we need not reach this question, because we reverse the district court on other grounds.

*Id.* at 744 n. 10. After a thoughtful discussion of the law of provisional arrest in the context of the extradition treaty with Italy, Judge Nickerson in *United States v. Messina,* 566 F.Supp. 740 (E.D.N.Y.1983) expressly disclaimed ruling on this issue, but nevertheless apparently found urgency:

However, in light of the court's determination that Messina and Charles Arico should not in any event be admitted to bail, the court need not decide whether the question of "urgency" is justiciable.

In the present case the "Italian authorities have expressly communicated their determination" that the provisional arrests are matters of urgency, a determination in which the United States concurs. The government contends that the Italian determination, while not binding on the United States, is due deference as a matter of comity. The Court agrees, and, in addition, accords considerable weight to the judgment of the United States, given its foreign affairs interest in the matter.

*Id.* at 745; *cf. United States v. Tang Yee-Chun,* 657 F.Supp. 1270, 1271 n. 1 (S.D.N.Y. 1987) ("[T]he United Kingdom's subsequent formal request for extradition has rendered moot the question of the validity of the provisional arrests."); *United States v. Smyth,* 795 F.Supp. 973, 977 (N.D.Cal.) ("As the court has held that "special circumstances" do exist which warrant granting bail, the urgency question raised by Smyth need not be decided."), *rev'd on other grounds,* 976 F.2d 1535 (9th Cir.1992). The Court of Appeals again indirectly addressed this issue in *United States v. Leitner,* 784 F.2d 159, 160–161 (2d Cir.1986) (per curiam), which involved the extradition treaty between the United States and Israel. After noting *Caltagirone* and *Messina* and adopting a broad interpretation of the term "urgency", the Court appears to have rested its affirmance of the District Court on Leitner's, the detainee's, failure to meet the "special circumstances" requirement for bail in an extradition case. In *Matter of Extradition of Russell,* 805 F.2d 1215 (5th Cir.1986), which in-

---

1. Although Magistrate Judge Caden ruled directly on this issue in *Spatola v. United States,* 741 F.Supp. 362, 366 (E.D.N.Y.1990) (*United States v. Spatola,* No. 89–643–M (JLC), 1989 WL 62993 (E.D.N.Y. June 9, 1989) (1989 Westlaw 62993 at *2) ), *aff'd,* 925 F.2d 615 (2d Cir.1991), Judge Bartels did not address it.

volved the extradition treaty between the United States and Colombia, the Court noted *Leitner* and *Messina* and adjudicated the issue of "urgency":

> Russell tries to distinguish those cases based on the fact that the crimes at issue involved violence. The reasoning of both cases, however, indicates that the question of "urgency" turns on the perceptions of the requesting and the requested countries. Here both Colombia and the U.S. think that this case is urgent. Furthermore, the magistrate had before him a description of the offense with which Russell is charged and some evidence that Russell may be a flight risk.

*Id.* at 1218; *see Matter of Extradition of Pazienza*, 619 F.Supp. 611, 612 (S.D.N.Y. 1985) (Concluding that the provisions for provisional arrest in the 1983 extradition treaty between the United States and Italy had been met following a full adversarial hearing).

In light of the treaty and relevant authorities, the Court has concluded that the issue of urgency under Article VIII of the protocol is not subject to judicial review. In the event the issue is considered justiciable, as the Court explains below, the Government's application satisfied Article VIII's urgency requirement.

Article VIII of the protocol speaks in terms of the parties to the treaty. In this case, on receipt of Australia's request for a provisional arrest, the United States was obligated to take appropriate steps to secure the arrests of the detainees. The language of subsection (3), however, speaks of notification of the disposition of the request and reasons for the "denial" of the request. This language acknowledges that the United States had the option of refusing Australia's request for a provisional arrest; otherwise, the language would be meaningless. Thus, as *Russell* and *Messina* observe, the request for provisional arrest in this case represents

a determination of urgency by the Government of Australia, and the Government's application for a warrant pursuant to § 3184 represents a determination of urgency by the Government of the United States. Section 3184, however, does not distinguish between provisional arrest warrants and arrest warrants following a formal demand for extradition. The Government applies for an arrest warrant, and as the discussion in *Caltagirone*, 629 F.2d at 744–748 demonstrates, issuance of the warrant is subject, first, to the language of the treaty, and second, to the Fourth Amendment's prohibition against unreasonable seizures.[2]

To justify a provisional arrest, Article XIII of the treaty in *Caltagirone* specifically required the Government to present "such further information" as would support the issuance of an arrest warrant if the offense had been committed in the United States. In effect, the parties had incorporated the Fourth Amendment's probable cause requirement into their agreement. The protocol here at issue contains no such provision. The Court of Appeals considers this difference significant:

> Our reading of Article XIII is buttressed further by the existence of other American extradition treaties authorizing provisional arrest in "urgent" cases, but requiring no additional information for the applying state to support the arrest. Accordingly, the provisional arrest provisions of American treaties fall into two groups: those with the informational requirement, and those without it. The availability of the choice leads us to attach importance to the difference, and confirms our view that the drafters of Article XIII intended to require the presentation of "such further information" needed to justify an arrest as a necessary condition for provisional arrest.

629 F.2d at 746 (footnotes omitted). As a result, the Court in *Caltagirone* recognizes that the parties to an extradition treaty un-

**2.** Even though the Court in *Caltagirone* explicitly eschewed the constitutional issue, 629 F.2d at 748 ("In our view, the language of Article XIII so clearly demands a showing of probable cause before any warrant for provisional arrest may issue, that we need not reach the constitutional question."), "[i]n carrying out its treaty obligations, the United States government must conform its conduct to constitutional requirements." *Matter of Extradition of McMullen*, 769 F.Supp. 1278, 1254 (S.D.N.Y.1991) (citing cases), *aff'd in part, rev'd in part on other grounds*, 989 F.2d 603 (2d Cir.1993) (in banc).

**294**

derstand the methodology for rendering the provisional arrest component(s) of the treaty subject to judicial review by a federal court. If the parties had wanted to make "urgency" subject to judicial review, they need only have employed appropriate comparable language to do so.[3]

The Fourth Amendment's probable cause limitation addresses the concerns Judge Nickerson expressed in *Messina:*

> The government contends that determinations of urgency are discretionary executive judgments which are so bound up with the foreign affairs power as to be nonjusticiable. Several considerations cast doubt on this contention. First, the courts scrutinize provisional arrest applications in other respects. *See Caltagirone v. Grant, supra.* Second, the requirement of urgency, although not stated in the list of matters that must be included in an application for provisional arrest, is found explicitly in Article XIII of the treaty. Third, the determination of whether risk of flight makes for urgency, like the determination of probable cause, is a matter within the institutional competence of the courts. Fourth, in the absence of judicial review, provisional arrest may become the rule rather than the exception, as contemplated by the treaty negotiations as well as past practice. *See Caltagirone v. Grant, supra,* 629 F.2d at 746 n. 18. And fifth, the broad authority of the executive in matters bearing on foreign affairs is not absolute when constitutional interests are implicated.

566 F.Supp. at 744.[4] It also satisfies the Court's concerns in *Caltagirone* that the Government may seek provisional arrests *ad infinitum* on the same charges without judicial review of the detention. 629 F.2d at 747–748.

In the context of an arrest prior to a request for extradition, the Government must demonstrate that probable cause exists to believe that the persons sought are subject to extradition pursuant to a treaty. The instant complaint satisfies this requirement and the requirements of Article VIII of the protocol. The persons sought are described in ¶¶ 9 and 10, their locations in ¶ 8, and the facts of the case leading to an Australian magistrate's issuance of arrest warrants, including the time and location of the offenses, in ¶¶ 5 and 7. Copies of the warrants are attached to the complaint, and the offenses charged appear to be subject to the treaty. The Australian laws allegedly violated are set forth in ¶ 2, the penalty in ¶ 4, the existence of the warrants in ¶ 5 and a statement that a request for extradition will follow in ¶ 13.

Finally, the Government also established the "urgency" of the case in its application. The term "urgency" has a broad definition, which encompasses the interests of the parties to the treaty, the importance to the country seeking extradition, the foreign policy concerns of the United States, the nature of the crimes and the risk of flight. *See United States v. Leitner, supra,* 784 F.2d at 161. To comply with the treaty, the United States must be able to deliver individuals within its jurisdiction who are subject to extradition. The complaint alleges that William Hamilton–Byrne is a citizen of the United Kingdom. The United Kingdom and Australia do not have an agreement which renders him subject to extradition for the charged offenses. At the time of their arrests the detainees were present in this country unlawfully because their respective visas had expired. Whatever knowledge they may or may not have had regarding the activities of the Australian authorities, they had considerable incentive to leave the United States.

Based on the foregoing, the detainees' motion is denied.

---

3. The principle of incorporating the law of each party into an extradition treaty has long been recognized, for example, with respect to the statute of limitations. *Jhirad v. Ferrandina,* 355 F.Supp. 1155, 1161 (S.D.N.Y.) (citing *Hatfield v. Guay,* 87 F.2d 358 (1st Cir.), *cert. denied,* 300 U.S. 678, 57 S.Ct. 669, 81 L.Ed. 883 (1937), *rev'd on other grounds,* 486 F.2d 442 (2d Cir.1973)).

4. Judge Nickerson also observed that "there may be an eighth amendment question when American citizens are held without bail in advance of a formal extradition request and without a showing of exigent circumstances." *id.* at 745; however, no eighth amendment issue has been raised on this motion.

SO ORDERED.