DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES R. BUTLER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-544

[September 20, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2009-CF-004111-AXXX-MB.

Jacob M. Noble, Palm Beach Gardens, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Appellant, James R. Butler, appeals his judgment and sentence after a jury found him guilty of two counts of sexual battery on a person less than 12 years of age. He raises five issues on appeal, four of which we affirm without discussion. We affirm as to the fifth issue as well, but write to explain why we disagree with his argument that the trial court erred in allowing the victim to testify via satellite.

*Background*

Butler was charged with two counts of sexual battery on a person less than 12 years of age involving one victim, who was an adult at the time of trial. The crimes were reported to law enforcement in 1998, but Butler was not arrested for the crimes until 2009 because he absconded.

Prior to trial, the State filed a motion to permit the Victim to testify via satellite live-streaming video transmission, since she had relocated to Australia in 2007. In support of the motion, the State submitted an affidavit by the Victim, which stated:

I, [the Victim], currently reside in Newcastle, Australia. I am the victim in the case of State v. James Butler, case number 2009CF004111AXX. I have applied for a return visa so that I can travel to Palm Beach County, Florida for trial. If I am unable to obtain a return visa, I will not be allowed back to Australia. At this time, I have not been approved for a return visa.

Additionally, if I am required to travel to Palm Beach County, Florida for trial, it will jeopardize my employment, due to the amount of days I will be missing from work. Since I don't have any extended family in Australia who could offer assistance, it will create a financial hardship for me.

Butler objected to the motion.

After a hearing, the trial court granted the State's motion, finding: (1) there was an important state interest because the allegations involved molestation of a minor; (2) it was a delayed prosecution case; (3) the Victim's testimony was crucial; (4) she could not be compelled to testify; (5) her financial hardship "in and of itself is [not] sufficient to . . . satisfy the requirements of satellite testimony"; (6) but the fact that her ability to return to Australia would be in question was "a sufficient circumstance to allow the satellite testimony, along with the other factors."

During a break in the trial, the Victim was connected via the satellite transmission. Since Butler did not have the chance to depose the Victim pretrial, the trial court allowed Butler's counsel the opportunity to speak to her off-record outside of the jury's presence before she testified. After the conversation, Butler renewed his objection to the satellite testimony because the Victim stated during the off-record conversation that she had been approved for a return visa to Australia *after* her affidavit was submitted by the State and the motion for her testimony by satellite transmission was granted, but that this was months *before* the trial started. Butler argued that, since the lack of return visa was the main reason that the trial court granted the State's motion, that basis was no longer a valid reason to deny his right of confrontation. Butler also moved for a continuance to allow the State to produce the Victim to testify in person. The trial court asked the State to speak to the Victim, to see if she would voluntarily travel to Florida to testify. The Victim stated she would not travel to Florida to testify because it would interfere with her job and would be emotionally difficult.

The trial court overruled Butler's objection. After again stating that the

Victim's financial concerns were not considered as part of its ruling, the trial court reasoned that although the Victim cleared up the visa issue, she made it clear that she refused to come to Florida to testify, and the trial court did not know of any way it or the State could compel her to come and testify. Additionally, the trial court concluded that the same compelling state interests continued to be present.

The Victim subsequently testified by satellite transmission about the inappropriate sexual contact by Butler, which began when she was around four or five years old. After her testimony, Butler renewed his objection, and the trial court further explained its reasoning for overruling his objection:

> Economics is not the basis of my decision. It's just her unequivocal refusal to appear voluntarily and the State's inability to compel a resident of a foreign country to come here live. That's the basis of my ruling.

Additionally, the State presented two *Williams*[1] rule witnesses, who testified to inappropriate sexual contact by Butler when they were younger than ten.

Other witnesses testified to establish the reason for Butler's delayed arrest. An investigator from Oklahoma testified that when the Victim reported Butler in 1998, she began an investigation, and questioned Butler about the allegations during an interview. She obtained a warrant for Butler's arrest three days after the interview, but when she made efforts to locate Butler in order to execute the warrant, over the span of "a couple months," "[h]e was gone."

An owner of a magazine testified that he employed Butler as a freelance writer under the pen name of "Christopher Lott." Because Butler was working for the magazine as an independent contractor, the owner needed him to fill out a 1099 tax form. The owner had to ask Butler three or four times for his real name and social security number to issue the 1099 form. When asked to describe Butler's behavior when asked his real name and social security number, the owner said that Butler was "elusive," "he appear[ed] nervous," and that "[i]t took a few minutes to actually get the name out, you know[.]" Butler's evasiveness prompted the owner to contact a law enforcement officer he knew and to pass on the information about the true identity of "Christopher Lott." The owner's contact with law

---

[1] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).

3

enforcement led to Butler's arrest in 2009, almost eleven years after the Oklahoma investigator had obtained a warrant for his arrest.

The jury found Butler guilty as charged in the information. After the judgment and sentence were entered, Butler gave notice of appeal.

*Appellate Analysis*

"In considering a trial court's ruling on admissibility of evidence over an objection based on the Confrontation Clause, our standard of review is *de novo.*" *McWatters v. State*, 36 So. 3d 613, 637 (Fla. 2010) (quoting *Milton v. State*, 993 So. 2d 1047, 1048 (Fla. 1st DCA 2008)).

Butler contends that the trial court erred in allowing the Victim to testify by satellite live-streaming video transmission, in lieu of physically appearing in court to testify, and denied him his rights under the Sixth Amendment Confrontation Clause. "The United States Supreme Court has 'emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial[.]'" *Perez v. State*, 536 So. 2d 206, 208 (Fla. 1988) (quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980)).

The main United States Supreme Court case addressing the Confrontation Clause in the context of video testimony is *Maryland v. Craig*, 497 U.S. 836 (1990). There, the defendant was charged with multiple counts, including sexual abuse offenses, all naming a six-year-old child as the victim. *Id.* at 840. Prior to trial, the state sought to allow the victim to testify via a one-way closed circuit television, pursuant to a Maryland statute which allowed such for a child witness who was the alleged victim of child abuse. *Id.* at 840-41. The trial court allowed the video testimony, and the defendant appealed the ruling asserting rights under the Confrontation Clause. *Id.* at 842-43.

The Supreme Court explained that "we have never insisted on an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant". *Id.* at 847. The Court observed:

> [O]ur precedents establish that "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," a preference that "must occasionally give way to considerations of public policy and the necessities of the case."

*Id.* at 849 (citations omitted). Applying these precedents, the Court held

> [T]hat where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of

4

the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

*Id.* at 857.

Relying heavily on *Craig*, the Florida Supreme Court addressed the issue of satellite testimony in *Harrell v. State*, 709 So. 2d 1364 (Fla. 1998). There, a couple visiting Florida were victims of a robbery before flying home to Argentina. *Id.* at 1366-67. Before trial, the State sought to introduce the couple's testimony via satellite, arguing that medium "was necessary because the victims were unable to be physically present in the courtroom, both because of the distance between the United States and Argentina and because of health problems that [one of the couple] was experiencing." *Id.* at 1367. The Third District upheld the procedure, but certified a question to our supreme court. *Id.* Our supreme court framed the issues on appeal to be "whether or not testimony via satellite in a criminal case violates the Confrontation Clause and, if so, whether the satellite procedure constitutes a permissible exception." *Id.*

The *Harrell* court explained that "[a]lthough the Confrontation Clause guarantees a criminal defendant the right to physically confront accusers, this right is not absolute. There are certain exceptions where a defendant's right to face-to-face confrontation will give way to 'considerations of public policy and the necessities of the case.'" *Id.* at 1368 (quoting *Craig*, 497 U.S. at 849-51). "However, such exceptions are only permitted when the reliability of the testimony is otherwise assured." *Id.* The court stated that reliability can be found through three elements:

> (1) that the witness will give the testimony under oath, impressing upon the witness the seriousness of the matter and protecting against a lie by the possibility of penalty of perjury, (2) that the witness will be subject to cross-examination, and (3) that the jury will have the chance to observe the demeanor of the witness, which aids the jury in assessing credibility.

*Id.* The court explained that the satellite testimony was *not* the equivalent of a face-to-face confrontation, and that "the satellite procedure can only be approved as an exception to the Confrontation Clause." *Id.* at 1369. Therefore, "the procedure must (1) be justified, on a case-specific finding,

based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation—oath, cross-examination, and observation of the witness's demeanor." *Id.*

Regarding the specific facts of the case, the *Harrell* court stated that there were public policy reasons to justify the satellite testimony, where: (1) the witnesses lived beyond the subpoena power of the court; (2) one of the witnesses was in poor health and could not make the trip; and (3) the witnesses "were absolutely essential to this case" and "there is an important state interest in resolving criminal matters in a manner which is both expeditious and just." *Id.* at 1369-70.

We construe *Harrell* to establish important factors to be considered by the trial court in determining whether an exception to a defendant's rights under the Confrontation Clause will allow use of satellite live-streaming video testimony by a witness. We discuss those factors with regards to the facts of this case.

*State Interests, Public Policies, or Necessities*

This factor appears to be the primary focus of disagreement in this case.

Both parties, as did the trial court, rely on *United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006), for their positions. In *Yates*, two defendants were charged with mail fraud, conspiracy to defraud the United States, conspiracy to commit money laundering, and prescription drug offenses arising out of their involvement in an internet pharmacy. *Id.* at 1309-10. Before trial, the government filed a motion to allow two witnesses from Australia to testify via two-way video. *Id.* at 1310. In support of the motion, the government argued that the witnesses were "essential" and the use of teleconference facilities for their testimony was necessary because they were beyond the government's subpoena powers. *Id.* The government asserted both witnesses were willing to testify at trial via video teleconference, but they were not willing to travel to the United States. *Id.* The district court granted the government's motion, finding that the witnesses were unwilling to travel to the United States, the government asserted the important public policies of crucial evidence and an interest in expeditiously resolving the case, and that the defendants' confrontation rights were not violated, since the video was two-way. *Id.*

On appeal, the Eleventh Circuit found that the trial court erred in allowing the satellite testimony. *Id.* at 1316. The court construed *Craig* to generally require an evidentiary hearing to determine whether the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy and whether the reliability of the testimony is

otherwise assured. *Id.* at 1315. The Eleventh Circuit determined the district court erred by not taking evidence to make the required determinations, but instead relying on the Government's assertions regarding the determinative factors. *Id.*

The court held that "under the circumstances of this case . . . the prosecutor's need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the Defendant's rights to confront their accusers face-to-face." *Id.* at 1316. Additionally:

> The district court made no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference. All criminal prosecutions include at least some evidence crucial to the Government's case, and there is no doubt that many criminal cases could be more expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial prosecution evidence and resolving the case expeditiously are important public policies that support the admission of testimony by two-way video conference.

*Id.* "*Craig* requires that furtherance of the important public policy make[s] it *necessary* to deny the defendant his right to a physical face-to-face confrontation." *Id.*

Butler makes no argument that the trial court erred when it initially allowed the satellite testimony, since the Victim did not have the proper government authorization at the time to travel to Florida and return to Australia. Instead, Butler argues that the trial court should not have allowed the satellite testimony after the Victim stated that she obtained the proper visa authorization a few months before trial. Butler argues that there was no important interest or public policy in this case to supplant his right of confrontation, and similar to *Yates*, the Victim simply refused to testify.

We agree with the State that the trial court properly applied *Yates* and *Craig*. The trial court did not simply conclude that the use of satellite live-streaming video testimony was justified because it would be more

7

convenient or would expedite the case or financially assist the victim. Instead, the trial court found that the important policy considerations were that the State has an interest in prosecuting alleged child sex offenders and that the Victim was beyond the subpoena power of the court and refused to travel to testify.

In *Harrell*, the factors that supported our supreme court's determination that video testimony was appropriate were: (1) the witnesses lived beyond the subpoena power of the court; (2) one of the witnesses was in poor health and could not make the trip; and (3) the witnesses "were absolutely essential to this case" and "there is an important state interest in resolving criminal matters in a manner which is both expeditious and just." *Harrell*, 709 So. 2d at 1369-70. Here, the factors that support the use of satellite live-streaming video testimony were: (1) the witness lived beyond the subpoena power of the court; (2) there is a state interest in prosecuting child sex offenders; and (3) the Victim was essential to the case. Just as health was considered as a sufficient factor in *Harrell*, courts have also held that the *type* of case is a relevant factor. *See, e.g., State ex rel. Montgomery v. Kemp*, 371 P.3d 660, 663 (Ariz. Ct. App. 2016) (finding a similar "accommodation is necessary to further two important public policies: protecting the rights of a vulnerable alleged sexual assault victim who has been ruled outside Arizona's subpoena power and preserving society's interest in prosecuting accused sexual offenders").

We agree that the prosecution of a child sexual offender is the *type* of limited cases which may justify an exception to a defendant's rights under the Confrontation Clause. In our view, the state interest in prosecuting child sex offenders is sufficiently comparable to the factor that a witness is in poor health and unable to travel to satisfy *Harrell*. Our holding on this point is limited to prosecutions of child sexual offenders in which the victim is beyond the reach of a subpoena and unwilling to travel to testify. Thus, we conclude the state interests, public policies, or necessities requirement of *Harrell* was met in this case.

*Adequate Oath Requirement*

Butler also argues that the adequate oath requirement was not met because the Victim was not subject to prosecution in Australia for perjury. The Victim was put under oath by a public notary in Australia. However, "an oath is only effective if the witness can be subjected to prosecution for perjury upon making a knowingly false statement." *Harrell*, 709 So. 2d at 1371.

> To ensure that the possibility of perjury is not an empty threat for those witnesses that testify via satellite from outside the United States, it must be established that there exists an extradition treaty between the witness's country and the United States, and that such a treaty permits extradition for the crime of perjury.

*Id.*

Butler acknowledges there is a treaty between the United States and Australia addressing extradition for the crime of perjury. It "covers an offence 'punishable under the laws of both Contracting Parties by deprivation of liberty of more than one year, or by a more severe penalty.'" *Matter of Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 289 (S.D.N.Y. 1993) (quoting *S. Treaty Doc.* 102–23, 102d Cong, 2d Sess (1992)). In Florida, "the offense of perjury in an official proceeding is a third-degree felony and is punishable by up to five years in prison." *Harrell*, 709 So. 2d at 1371; *see also* § 837.02(1), Fla. Stat. (2017) ("Except as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree[.]"); § 775.082(3)(e), Fla. Stat. (2017) ("For a felony of the third degree, [a person who has been convicted may be punished] by a term of imprisonment not exceeding 5 years."). Therefore, perjury is a qualifying offense for the extradition treaty and Butler's argument has no merit.

*Cross-Examination and Observation Requirement*

We determine the cross-examination and observation requirements were met in this case as well. Butler was able to cross-examine the Victim during the trial, and there is no suggestion that the jury could not see the Victim, and vice versa.

*Conclusion*

Having concluded that the trial court properly analyzed the policy factors, elements of reliability, and principles of law in allowing an exception to Butler's rights under the Confrontation Clause and permitting testimony by satellite transmission, we affirm the judgments and sentences imposed against Butler by the trial court.

*Affirmed.*

GROSS and KLINGENSMITH, JJ., concur.

\*        \*        \*

*Not final until disposition of timely filed motion for rehearing.*