COX, Circuit Judge:
The court took this case en banc to consider whether witness testimony presented on a television monitor at a criminal trial in Montgomery, Alabama, by live, two-way video conference with witnesses in Australia, violated the Defendants’ Sixth Amendment right to confront the witnesses against them. Holding that it did, we vacate the convictions and remand for a new trial.
I. BACKGROUND & PROCEDURAL HISTORY
Anton Pusztai and Anita Yates (“Defendants”) were tried in the Middle District of Alabama for mail fraud, conspiracy to de *1310 fraud the United States, conspiracy to commit money laundering, and various prescription-drug-related offenses arising out of their involvement in the Norfolk Men’s Clinic, an Internet pharmacy based in Clanton, Alabama.
At the pre-trial motion stage, the Government moved for an order allowing the introduction of testimony from two witnesses in Australia by means of live, two-way video conference. (R.2-248.) In support of its motion, the Government stated that Mr. Paul Fletcher Christian (who allegedly processed customer Internet payments for the Defendants) and Dr. Tibor Konkoly (whose name the Defendants allegedly used on Internet drug prescriptions) were both “essential witnesses to the government’s case-in-chief.” (Id. at 1.) The Government further submitted: “[a]l-though both witnesses are willing to testify at trial via video teleconference, they are unwilling to travel to the United States. Because they are beyond the government’s subpoena powers, the government seeks permission for these witnesses to testify through the use of teleconference facilities.” (Id. at 2.)
Defendants opposed the motion, arguing that admission of such testimony would violate their Sixth Amendment rights to confrontation because it would deny them face-to-face encounters with the witnesses against them. (R.2-261; R.3-314 at 3.)[1]
The district court granted the Government’s motion, finding that Defendants’ confrontation rights would not be violated because the two-way video conference would allow Defendants to see the witnesses and the witnesses to see Defendants during the testimony. (R.3-314.) The court found that the Australian witnesses were unwilling to travel to the United States for trial, (Id at 2.); the Defendants did not contest this finding. The court also found that the Government asserted an “important public policy of providing the fact-finder with crucial evidence,” (Id. at 19.), and that “the Government also has an interest in expeditiously and justly resolving the case.” (Id. at 22.)
Because the courtroom was not outfitted with video equipment, the trial was temporarily moved to the United States Attorney’s office for the video conference. At trial, Defendants objected on Sixth Amendment grounds to the introduction of the testimony. (R.8 at 347-48; R.ll at 103.) Christian and Konkoly were sworn in by a deputy clerk of the federal district court and acknowledged that they understood that their testimony was under oath and subject to penalty for perjury. The Government then questioned the witnesses by means of two-way video conference. Both Defendants, the jury, and the judge could see the testifying witnesses on a television monitor; and the witnesses could see the temporary courtroom in the U.S. Attorney’s conference room.[2] Each Defendant’s attorney cross-examined both Konkoly and Christian. The jury found the Defendants guilty on all counts. Defendants appeal those convictions.
*1311 In a published opinion, a three-judge panel of this court, applying the rule articulated in Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), held that Defendants’ Sixth Amendment confrontation rights were violated by the admission of the testimony of these witnesses by means of two-way video conference. United States v. Yates, 391 F.3d 1182 (11th Cir.2004). The panel vacated the convictions and remanded for a new trial. Id. The Government petitioned for rehearing en banc. This court vacated the panel opinion and granted the petition for rehearing en banc to consider this important constitutional question. United States v. Yates, 404 F.3d 1291 (11th Cir.2005).
II. ISSUES ON APPEAL AND STANDARD OF REVIEW
We discuss only two of the issues Pusztai and Yates present on appeal.[3] First, Defendants contend that their Sixth Amendment rights to confrontation were violated by admission of this testimony taken from witnesses who were physically present in Australia while Defendants were in Montgomery, Alabama. In support of this contention, they maintain that their rights to confront the witnesses face-to-face were violated and that the witnesses were not given a proper oath. The admission of testimony by two-way video conference presents a mixed question of law and fact; therefore, we review de novo Defendants’ claim that their Sixth Amendment rights were violated. See Lilly v. Virginia, 527 U.S. 116, 137, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999).
The second issue we discuss is Defendants’ contention that the district court erred in denying their motions for judgment of acquittal on the ground that the evidence was insufficient to support their convictions. We review this ruling de *1312 novo. United States v. Pistone, 177 F.3d 957, 958 (11th Cir.1999).
III. DISCUSSION
A. The Confrontation Clause
Defendants argue that admission of the video-conferenced testimony was not necessary to further an important public policy and thus violated the rule announced in Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666.
The Sixth Amendment provides: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI. This clause, known as the Confrontation Clause, “guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.” Coy v. Iowa, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). This right to a physical face-to-face meeting, however, is not absolute and may be compromised under limited circumstances where “considerations of public policy and necessities of the case” so dictate. Craig, 497 U.S. at 848, 110 S.Ct. at 3165. At issue in this appeal is whether the district court’s findings demonstrate that denial of physical face-to-face confrontation was necessary to further an important public policy.
In Craig, the Supreme Court upheld, over a defendant’s Sixth Amendment challenge, a Maryland rule of criminal procedure that allowed child victims of abuse to testify by one-way closed circuit television from outside the courtroom. 497 U.S. at 858, 110 S.Ct. at 3170. The defendant could see the testifying child witness on a video monitor, but the child witness could not see the defendant. Id. at 841-42, 110 S.Ct. at 3161. The defendant contended that this procedure violated his Sixth Amendment right to confrontation because he was denied a physical face-to-face encounter with the witness. Id. at 842, 110 S.Ct. at 3161-62. The Supreme Court approved Maryland’s rule, stating: “though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of .the Sixth Amendment’s guarantee of the right to confront one’s accusers.” Id. at 849-50, 110 S.Ct. at 3165-66. The Court held that “[t]he Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the ease.” Id. at 849, 110 S.Ct. at 3165. The Court explained, “a defendant’s right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.” Id. at 850, 110 S.Ct. at 3166.
The Government offers two arguments for why we should not apply the Craig rule in this case. First, it maintains that Craig should not apply because the testimony in this case was presented by two-way video conference rather than one-way video conference as in Craig. Second, it asserts that two-way video conference testimony is superior to testimony taken by deposition under Federal Rule of Criminal Procedure 15 in protecting the confrontation rights of defendants; therefore, it should be admissible whenever Rule 15 deposition testimony would be. We disagree with both arguments.
The Government relies on United States v. Gigante, 166 F.3d 75 (2d Cir.1999), a case in which the Second Circuit approved the use of two-way, closed circuit television to present the testimony of a witness from an undisclosed location outside the courtroom. The Gigante court declined to apply the Craig standard, rea *1313 soning that, because the Supreme Court crafted its two-part “standard to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant ..., it is not necessary to enforce the Craig standard in this case.” Id. at 81.
We reject this reasoning. The Gigante trial court should have applied Craig. In fact, it did hold the required evidentiary hearing, took evidence from medical experts, and found that both live witness testimony at trial and a Rule 15 deposition were inappropriate in the trial of an accused mobster charged with, among other things, conspiracy to murder because the witness: (1) was a former mobster participating in the Federal Witness Protection Program, (2) was at an undisclosed location, and (3) was in the final stages of inoperable, fatal cancer. In addition, the district court found that the defendant was unable to travel due to his own medical problems. Id. at 80, 81. Thus, if the district court had applied the Craig test, its necessity standard likely would have been satisfied; to keep the witness safe and to preserve the health of both the witness and the defendant, it was necessary to devise a method of testimony other than live, in-court testimony and other than a Rule 15 deposition.
On review, the Second Circuit acknowledged that, “[tjhere may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony.” Id. at 81. Therefore, “the use of remote, closed-circuit television testimony must be carefully circumscribed.” Id. at 80. Indeed, the Second Circuit held that Gigante’s confrontation rights had been adequately protected by the district court through its procedure of holding an evidentiary hearing and making specific factual findings regarding the exceptional circumstances that made it inappropriate for the -witness to appear in the same place as the defendant. Id. at 79-80, 81.
Our circuit precedent acknowledges that Craig supplies the proper test for admissibility of two-way video conference testimony. See Harrell v. Butterworth, 251 F.3d 926, 930 (11th Cir.2001) (on habeas review, holding Florida Supreme Court’s decision that Craig test was satisfied so as to allow two-way video testimony was not contrary to, nor an objectively unreasonable application of, federal law as determined by the Supreme Court). We are not alone. Four other circuits agree. The Eighth Circuit has explicitly rejected the argument that the Craig test does not apply to testimony presented my means of two-way video conferencing. United States v. Bordeaux, 400 F.3d 548, 554-55 (8th Cir.2005) (declining to follow United States v. Gigante, 166 F.3d 75 (2d Cir.1999) and finding that “ ‘confrontation’ via a two-way closed circuit television is not constitutionally equivalent to a face-to-face confrontation.”). In addition, the Sixth, Ninth, and Tenth Circuits have applied the Craig rule to test the admissibility of two-way video testimony at trial. Indeed, for more than a decade, circuit courts have recognized that to allow prosecutorial presentation of child witness testimony via two-way closed-circuit television under the Child Victims’ and Child Witnesses’ Rights Statute, 18 U.S.C. § 3509, the findings of the trial court must satisfy the Craig test in order to satisfy the Confrontation Clause. See, e.g., United States v. Turning Bear, 357 F.3d 730, 737 (8th Cir.2004); United States v. Moses, 137 F.3d 894, 897-98 (6th Cir.1998); United States v. Weekley, 130 F.3d 747 (6th Cir.1997); United States v. Rouse, 111 F.3d 561, 568 (8th Cir.1997); United States v. Quintero, 21 F.3d 885, 892 (9th Cir.1994); United States v. Carrier, 9 F.3d 867 (10th Cir.1993); United States v. Garcia, 7 F.3d 885, 887-88 (9th Cir.1993); United States v. Farley, 992 F.2d 1122, 1125 (10th Cir.1993). The Second Circuit stands *1314 alone in its refusal to apply Craig. See Gigante, 166 F.3d 75.[4]
Because Defendants were denied a physical face-to-face confrontation with the witnesses against them at trial, we must ask whether the requirements of the Craig rule were satisfied, justifying an exception to the physical face-to-face confrontation requirement of the Sixth Amendment. As indicated earlier, under Craig, such testimony may be offered “only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.” 497 U.S. at 850, 110 S.Ct. at 3166.
We reject the Government’s argument that Craig does not apply because two-way video conference testimony is necessarily more protective of defendants’ confrontation rights than the method of admitting testimony of an unavailable witness prescribed by Rule 15.[5] First, the Government’s argument ignores the fact that Rule 15 gives the defendant the opportunity to be present at the deposition and thus an opportunity for physical face-to-face confrontation. Second, the Government concedes that the procedure used in this case is not authorized by the Federal Rules of Criminal Procedure. Rather, the Government argues, admission of video testimony is within the inherent powers of trial courts. But history demonstrates otherwise. In 2002, the Advisory Committee on the Criminal Rules suggested a revision to Federal Rule of Criminal Procedure 26 that would have allowed testimony by means of two-way video conferencing. Thereafter, the Supreme Court transmitted to Congress proposed amendments to the Federal Rules of Criminal Procedure. The Court declined to transmit the proposed revision to Rule 26 that would have allowed testimony by two-way video conference. Justice Scalia filed a statement explaining that he shared “the majority’s view that the Judicial Conference’s proposed Fed. Rule Crim. Proc. 26(b) is of dubious validity under the Confrontation Clause of the Sixth Amendment *1315 to the United States Constitution .... ” Order of the Supreme Court, 207 F.R.D. 89, 93 (2002). He remarked that the proposed amendments were “contrary to the rule enunciated in Craig” in that they would not limit the use of remote testimony to “instances where there has been a ‘case-specific finding’ that it is ‘necessary to further an important public policy.’” Id. (citation omitted). Rule 26 was not revised to allow such testimony.
Thus, to accept the Government’s reasoning on this point, we would need to accept its implicit claim that it knows best how to protect defendants’ confrontation rights. We do not accept this claim. To do so would require that we disregard the history of the proposed amendments to Rule 26. Further, to accept the Government’s claim, we would have to ignore the carefully-crafted provisions of Rule 15 that were designed to protect defendants’ rights to physical face-to-face confrontation and instead approve a procedure not contemplated by the Federal Rules of Criminal Procedure.
The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation. As our sister circuits have recognized, the two are not constitutionally equivalent. See, e.g., United States v. Bordeaux, 400 F.3d 548, 554-55 (8th Cir.2005). The Sixth Amendment’s guarantee of the right to confront one’s accuser is most certainly compromised when the confrontation occurs through an electronic medium. Indeed, no court that has considered the question has found otherwise; even the Gigante court acknowledged that, “the use of remote, closed-circuit television testimony must be carefully circumscribed.” United States v. Gigante, 166 F.3d 75, 80 (2d Cir.1999).
As stated above, where a defendant’s right to confront a witness against him will be affected, the determination of whether a particular case requires a departure from usual. procedures must be made, by the trial court, on a case-by-case basis. Craig, 497 U.S. at 854, 110 S.Ct. at 3169. The court generally must: (1) hold an evidentiary hearing and (2) find: (a) that the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy and (b) that the reliability of the testimony is otherwise assured. Id. at 850, 855, 110 S.Ct. at 3166, 3169. The first part of this test requires that the trial court find that it is essential to deny the defendant his right to face-to-face physical confrontation in order to serve the interest the government asserts. See, id. at 855, 110 S.Ct. at 3169 (stating that, in order to separate the witness and defendant, the problem must be the physical presence of the defendant during the witness’s testimony, not some other problem that could be remedied by a less intrusive solution).
In this case, the district court applied the Craig test to permit the Australian witnesses to testify by two-way video conference broadcast on a television monitor at the trial convened in the United States Attorney’s Office in Montgomery, Alabama.[6] (R.3-314.) However, it held no hearing to consider evidence of the necessity for the video conference testimony. Rather, the trial court allowed the two-way video testimony based' only on the Government’s assertions in its motion that the Australian witnesses were unwilling to travel to the United States for trial, (Id. at 2.), and the Government’s posited “important public policies] of providing the fact-finder with crucial evidence,” (Id. at 19.), “expeditiously and justly resolving the *1316 case,” (Id. at 22.), and “ensuring that foreign witnesses can so testify.” (Id. at 20.) The district court considered sufficient the Government’s stated “important public policy of providing the fact-finder with crucial evidence,” (Id. at 19), and “interest in expeditiously and justly resolving the case.”[7] (Id. at 22.) We accept the district court’s statement that the witnesses were necessary to the prosecution’s case on at least some of the charges, as the record supports the Government’s assertion that the testimony was crucial to a successful prosecution of the Defendants and aided expeditious resolution of the case. The Government’s interest in presenting the fact-finder with crucial evidence is, of course, an important public policy. We hold, however, that, under the circumstances of this case (which include the availability of a Rule 15 deposition), the prosecutor’s need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the Defendants’ rights to confront their accusers face-to-face.
The district court made no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference; All criminal prosecutions include at least some evidence crucial to the Government’s case, and there is no doubt that many criminal cases could be more expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial prosecution evidence and resolving the case expeditiously áre important public policies that support the admission of testimony by two-way video conference. See, e.g., Remote Testimony—A Prosecutor’s Perspective, 35 U. Mich. J.L. Reform 719 (2002).
Craig requires that furtherance of the important public policy make it necessary to deny the defendant his right to a physical face-to-face confrontation. 497 U.S. at 852, 110 S.Ct. at 3167. In this case, there simply is no necessity of the type Craig contemplates. When one considers that Rule 15 (which provides for depositions in criminal cases) supplied an alternative, this lack of necessity is strikingly apparent.[8]
The version of Rule 15 in effect at the time of Defendants’ trial states:
*1317 Whenever, due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order testimony of such witness be taken by deposition ....
Fed.R.Crim.P. 15(a) (2002). The rule continues, guaranteeing the defendant’s right to physical face-to-face confrontation by specifically providing for his presence at the deposition. Fed.R.Crim.P. 15(b) (2002); see also, Don v. Nix, 886 F.2d 203, 206 (8th Cir.1989) (holding that the Sixth Amendment guarantees a criminal defendant the opportunity to be present at the deposition of an accuser); United States v. Benfield, 593 F.2d 815, 821 (8th Cir.1979) (same); In re Letters of Request from Supreme Court of Hong Kong, 821 F.Supp. 204, 209 (S.D.N.Y.1993) (stating that Rule 15 guarantees defendants a right to be present at deposition so as to prevent use of deposition testimony at trial from violating Sixth Amendment right to confrontation). Even a defendant in custody “shall” be produced for the deposition, unless the defendant waives the right to be present in writing or is disruptive. Fed. R.Crim.P. 15(b) (2002). Indeed, the defendant’s presence at the deposition is so important that, if he cannot afford to attend, the government may be ordered to pay the costs of travel and subsistence expenses for him and his attorney. Fed. R.Crim.P. 15(c) (2002).[9]
The Government argues that depositions later read into the record at trial, in fact, do occur without the defendant having been present. While that may be so, it is only the rare, exceptional case. Rule 15, properly utilized, protects a defendant’s confrontation rights by affording the defendant an opportunity to be present at the deposition. United States v. Drogoul, 1 F.3d 1546, 1556 (11th. Cir.1993). It is the extraordinary circumstance where deposition testimony is taken despite a defendant’s want of opportunity to be present. See, e.g., United States v. Salim, 855 F.2d 944, 949 (2d Cir.1988) (finding that deposition may be taken,. despite foreign country’s refusal to allow defendant to be present but deferring question of whether admission of such a deposition would violate the Confrontation Clause). Even in those exceptional cases, courts have said that the government must have made diligent and reasonable efforts to produce the defendant at the taking of the deposition. Id. at 950-51; see also United States v. McKeeve, 131 F.3d 1, 8 (1st Cir.1997). Other circuits have recognized that failure to make such efforts, followed by use of the deposition at trial, violates the defendant’s confrontation rights. See, e.g., Christian v. Rhode, 41 F.3d 461, 465-67 (9th Cir.1994).
On this record, there is no evidentiary support for a case-specific finding that the witnesses and Defendants could not be placed in the same room for the taking of pre-trial deposition testimony pursuant to Rule 15. Other than stating that the witnesses would not come to the United States, the trial court gave no reason why the witnesses and Defendants could not all be in the same room for a pre-trial deposition.[10] The district court did not find that *1318 there was anything to prevent the Defendants from traveling to Australia to be present for a Rule 15 deposition. In fact, it found that the only reason a Rule 15 deposition may not have been an appropriate alternative to the video conference was that the Government had waited too long to request such a deposition.[11] (R.3-314 at 27.)
Moreover, in this case, the Government never requested a Rule 15 deposition. The Government has never maintained that any special circumstance created an inability to take such a deposition or that it would have been impossible to allow Defendants to attend such a deposition. Instead, it has argued only that testimony presented by two-way video conference is superior to testimony taken by Rule 15 deposition with witness and defendant in the same room. While that might be the opinion of some, it was not the opinion of Defendants. Should they have wished to waive their rights to confrontation, they were able to do so. In the absence of such a waiver or case-specific findings of exceptional circumstances creating the type of necessity Craig contemplates, however, witnesses and criminal defendants should meet face-to-face. The Sixth Amendment so requires.
“The right guaranteed by the Confrontation Clause includes not only a ‘Personal examination,’ but also ‘(1) insures that the witness will give his statements under oath thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the “greatest legal engine ever invented for the discovery of truth”; [and] (3) permits the jury that is to decide the defendant’s fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.’ ” Craig, 497 U.S. at 845-46, 110 S.Ct. at 3163 (citations omitted). Defendants contend that the oath sworn by the Australian witnesses was not meaningful, either because it was invalid (as it was not administered in Australia, by someone authorized by federal law to give an oath outside of the United States) or because it did not subject the witnesses to a plausible threat of prosecution for perjury. We need not address these contentions. Because we find that denial of Defendants’ Sixth Amendment rights to face-to-face confrontation was not necessary to further an important public policy in this case, we proceed no further with the Craig analysis. We therefore do not consider the meaningfulness of the oath as administered.[12]
*1319 B. Motions for Judgment of Acquittal
Finally, we turn to Defendants’ contentions that the district court erred in denying their motions for judgments of acquittal based on their assertions that the evidence admitted at trial was insufficient to support their convictions. Pusztai made no argument in his initial appellate brief regarding the insufficiency of the evidence upon which he was convicted; thus, we do not consider the sufficiency of the evidence against him. Having reviewed the evidence admitted at trial, we find it sufficient to support Yates’s convictions. Our conclusion is buttressed by the fact that Yates testified at trial, and the jury obviously rejected her testimony.[13] See United States v. Brown, 53 F.3d 312, 314 (11th Cir.1995) (“[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant’s guilt.”).
Thus, retrial of Defendants is not barred because we reverse for trial error rather than on insufficiency of the evidence grounds. See United States v. Scott, 437 U.S. 82, 90-91, 98 S.Ct. 2187, 2193-94, 57 L.Ed.2d 65 (1978) (“The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.”).
IV. CONCLUSION
Because the presentation of live, two-way video conference testimony on a television monitor violated Defendants’ Sixth Amendment confrontation rights, we vacate their convictions and remand for a new trial.
CONVICTIONS VACATED; REMANDED FOR A NEW TRIAL.

. Yates’s written opposition to the Government’s motion is in the record on appeal, but a search for Pusztai's opposition is fruitless. The docket sheet does not contain an entry for the document. But Pusztai apparently submitted a response to the Government's motion, because the Government cites his response in its reply brief. Pusztai objected to the introduction of the testimony at trial, however, and the Government does not contend that the issue is not preserved.

. The record reflects, however, some technical difficulties that impacted the abilities of the witnesses, Defendants and counsel to see each other and to communicate during the video conference. For example, during Christian’s testimony, the following exchange occurred:
Q. [by Assistant U.S. Attorney] I’m going to ask the gentleman controlling this to take a look around the courtroom here so *1311 you can see everybody that’s in this room and ask you if you see Mr. Pusztai.
[Camera scanning the courtroom]
... Sir, have you seen Mr. Pusztai?
A. [by Christian] I think so. It’s a little bit hard to focus on the camera. There, are we? Yes.
(R.ll at 106.)
Konkoly’s inability to see clearly was also a problem:
Q. [by Assistant U.S. Attorney] Do you know whether or not you would recognize the partner that you have referred to that was at the dinner with Mr. Pusztai?
A. [by Konkoly] I think so.
[Camera scanning the courtroom]
... May I have a close look at the lady on the left-hand side in the back, please?
The Court: Yes, you may.
Technician: This is the closest I can zoom in.
[by Konkoly] If you could go to the side a bit, please. I cannot see from the corner of the screen. [Scanning] ...
No I can't not [sic] say that categorically. I cannot recognize the face at the present time.
(R.ll at 161-62.)

. Defendants also contend that the district court erred by: (1) denying their motions for mistrial based on a Jencks/Brady violation; (2) barring Yates from cross-examining Pusztai about a relationship with another woman; and (3) denying Pusztai’s motion for personal access to computer disks related to his defense. We find no merit in these contentions. See 11th Cir. Rule 36-1.
Defendants further argue that the district court erred in the imposition of their sentences. We need not address this argument because we set aside Defendants’ convictions and order a new trial.
Finally, in her en banc brief, Yates contends that admission of the video conference testimony violated Federal Rule of Criminal Procedure 26 because the testimony was not "taken in open court.” Fed.R.Crim.P. 26. Because this argument was not made in her initial appellate brief, it is waived. United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir.2005). We express no opinion as to whether Rule 26 was violated.

. Notably, both dissenting opinions argue (but the Government does not) that the proper standard to be applied is that stated in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the most recent Supreme Court case governing the admissibility of out-of-court testimonial statements. No doubt the Government passes on this argument because it recognizes that Crawford applies only to testimonial statements made prior to trial, and the live two-way video testimony at issue in this case was presented at trial.
The dissenters contend that the fact that a witness is legally unavailable necessarily means that any testimony given by that witness, by any means, is hearsay testimony subject only to the requirements of Crawford— unavailability and an opportunity to cross-examine. In addition to its departure from longstanding precedent, this reasoning assumes away the constitutional issue in this case — whether the confrontation that occurred is constitutionally sufficient. Crawford does not answer this question.

. The district court found that the Government had demonstrated the existence of exceptional circumstances sufficient to justify the taking of a Rule 15 deposition. (R.3-314 at 26.) The Government contends, therefore, that it would have been proper to have read into the trial record deposition testimony taken pursuant to Rule 15. And, it argues without citation other than Gigante — that two-way video conference testimony is constitutionally superior to admission of Rule 15 deposition testimony at trial because it allows defendants and witnesses to see each other (albeit through a television monitor), provides for cross-examination at the time of trial, and gives the jury the opportunity to see witnesses instead of just hearing their words read from a deposition transcript. Thus, the Government concludes, admission of two-way video conference testimony is sufficiently protective of defendants' Sixth Amendment rights to confrontation whenever deposition testimony taken pursuant to Rule 15 would be admitted.

. The Defendants also objected at trial to conducting the video conference in the United States Attorney’s office. While the Defendants have abandoned this objection on appeal, we remain concerned with the shift of a trial to a United States Attorney's office.

. There is no evidentiary support for the district court's finding that the Government's interest in expeditiously and justly resolving the case created a necessity for the video testimony. However, the district court was critical of the Government's delay in identifying the need for the foreign witnesses’ testimony. See n. 9 infra. There is some indication that the court was concerned that the trial would be delayed if a Rule 15 deposition needed to be taken. (R.3-314 at 26.) In that circumstance, allowing the video testimony aided the expedient resolution of the case only because the Government had already been less than diligent in seeking a Rule 15 deposition.
The district court also noted that “in today's world of the internet and increasing globalization, more and more situations will arise in which witnesses with material knowledge are beyond the subpoena power of the Court.” (R.3-314 at 22.) Because this finding regarding the future of communications was not case-specific, we do not consider it. See Craig, 497 U.S. at 855-56, 110 S.Ct. at 3169 (requiring case-specific findings).

. The dissenters argue that the majority accords Rule 15 quasi-constitutional status. That is incorrect. We do not suggest that Rule 15 is the only way to comply with the Confrontation Clause. We find only that the availability of a Rule 15 deposition demonstrates that, in this case, it was not necessary to deprive the Defendants of face-to-face meetings with their accusers.

. The current version of Rule 15 continues to guarantee the defendant, whether in custody or not, an opportunity to be present at the deposition. Fed.R.Crim.P. 15(c). The current rule is more protective of indigent defendants, however. In a case like this, where the deposition would be taken at the request of the government, the current rule requires the government to pay the expenses of such a defendant's attendance. Fed.R.Crim.P. 15(d).

. Other courts have identified legitimate reasons why physical face-to-face confrontation cannot be accommodated. This is not a case *1318 like Craig where, in order to preserve the delicate psyche of the child who was the alleged victim of abuse, it was necessary to devise a procedure by which the child testified outside the presence of the alleged abuser. Neither is it like Gigante, where, in order to protect the health and safety of the former mobster witness, it was necessary to use such a procedure to separate him from the alleged mob boss defendant. In this case, the Government’s interest in "providing the fact-finder with crucial evidence” simply did not make it necessary to separate the Australian witness from the Defendant accused of illegal sales of prescription drugs.

. Despite finding that the Government knew of the Australian witnesses and their relevance for over two years before it made its pre-trial motion, that the Government had seriously delayed in making its request to admit video conference testimony by the Australian witnesses, and that this serious delay "would likely typify the kind of delay warranting the denial of a Rule 15 deposition,” (R.3-314 at 27.), the district court found that the delay created "no real prejudice” to Defendants. (Id. at 9-10.) We disagree.

. There is also a question whether the Defendants timely challenged the oath or waived their argument that it was invalid. We need not address that question either.

. Yates argues in her briefs to the en banc panel that we should ignore evidence admitted in violation of the Confrontation Clause in determining the sufficiency of the evidence upon which she was convicted. She did not make this argument in her initial appellate brief. Therefore, she has waived it. United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir.2005). We apply the usual rule and consider all the evidence admitted at trial, including the video conference testimony.