Robert T. Numbers, II, United States Magistrate Judge
The United States asks permission to have one of its witnesses testify at trial by video conference because she is in Hawaii and has already traveled to Raleigh once before for a bench conference that was continued at the last minute. This request is understandable and, in many ways, quite reasonable. But under the Sixth Amendment's Confrontation Clause, Defendant Amelia G. Rivera has a right to have the witnesses against her testify before her in person. A court may only deny a defendant this right if excusing the witness's attendance furthers an important public policy and the reliability of her testimony is otherwise assured. The Government has not met this standard, so the court will deny[1] its motion.
I. Background
The United States filed a criminal information against Rivera in March 2018 containing *313 three misdemeanor counts related to events that allegedly occurred on Fort Bragg. After she pleaded not guilty, the court set a bench trial for January 24, 2019. On the morning of bench trial Government counsel appeared along with several witnesses. One of the witnesses, Kendall Hess, flew in from Hawaii to testify. But defense counsel found himself without a client. Rivera was in the hospital dealing with a serious medical emergency involving her child. At defense counsel's request, the court continued the bench trial until April 2018.
In March 2018, the Government filed a motion asking to allow Hess to testify at the rescheduled bench trial by video conference. It argued that the court should grant the motion because Hess had traveled before to Raleigh for the continued bench trial. Rivera's counsel objected to this request on unspecified grounds.
II. Analysis
The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. But the text does not explain whether a witness testifying at trial by two-way video conference technology satisfies its terms. And neither the Supreme Court nor the Fourth Circuit have weighed in on this issue.
Absent an answer from the explicit constitutional text, the court will look to the Confrontation Clause's original public meaning and cases interpreting the clause in other contexts to resolve this issue. Neither source of authority particularly helps the Government. A review of the Clause's history and the common law at the time of the Sixth Amendment's ratification show that in person, face-to-face confrontation was key to the Clause's protection. And the Supreme Court has severely restricted a court's ability to excuse a witness from appearing in person at a trial. What's more every Court of Appeals who has addressed the constitutionality of a witness appearing by two-way video, except one, has required witnesses to appear in person.
The Framers designed the Confrontation Clause to prevent the "use of ex parte examinations as evidence against the accused." Crawford v. Washington , 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Their concerns arose from a series of abuses in the 16th and 17th centuries where prosecutors used out-of-court, un-confronted testimony to convict accused persons. Id. at 43-44, 124 S.Ct. 1354. The most notorious example occurred in the trial of Sir Walter Raleigh. Among the evidence prosecutors levied against Raleigh was a letter from an alleged accomplice. Id. at 44, 124 S.Ct. 1354. Sensing that his accuser had lied to spare himself, Raleigh demanded that the letter's author be brought to court so he could confront him. Id. But the judges denied his request. Id. The jury convicted Raleigh and he received a death sentence. Id.
England responded to these abuses with a series of laws that led to the right of confrontation. Id. at 45-47, 124 S.Ct. 1354. Among the changes was a requirement in treason statutes requiring "witnesses to confront the accused 'face to face' at his arraignment." Id. at 44, 124 S.Ct. 1354. And English courts "developed relatively strict rules of unavailability, admitting examinations only if the witness was demonstrably unable to testify in person." Id. at 45, 124 S.Ct. 1354. Thus, the common law view of confrontation involved "examination of witnesses viva voce [orally], in the presence of all mankind[.]" 3 William Blackstone, Commentaries on the Laws of England *373 (1768). This method of taking evidence was "much more conducive to *314 the clearing up of truth, than the private and secret examination taken down in writing before an officer... where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal." Id.
It was this common law concept, which embraced "live testimony in court subject to adversarial testing" which informed the founding generation's views of adequate witness confrontation. Crawford , 541 U.S. at 43, 124 S.Ct. 1354. And although the People ratified the Sixth Amendment in 1791, its protections apply with equal force to circumstances unimaginable at that time-such as testimony through video technology. The Supreme Court has repeatedly recognized that the meaning of a provision of the Bill of Rights remains constant while the fixed legal content is applied to new technologies. See Kyllo v. United States , 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ; see also Brown v. Entm't Merch. Ass'n , 564 U.S. 786, 790, 131 S.Ct. 2729, 180 L.Ed.2d 708 (2011) ; Carpenter v. United States , --- U.S. ----, 138 S.Ct. 2206, 2271, 201 L.Ed.2d 507 (2018) (Gorsuch, J., dissenting).
For example, in Kyllo , the Court held that sense-enhancing technology allowing officers to view the inside of a home amounts to a search under the original meaning of the Fourth Amendment, even though they had not physically intruded on the home. Kyllo , 533 U.S. at 34, 121 S.Ct. 2038. "This assures preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted[.]" Id.
Similarly, in Brown , the Supreme Court held that violent video games are protected speech under the First Amendment. The Court analogized the video games to "the protected books, plays, and movies that preceded them[.]" Brown , 564 U.S. at 790, 131 S.Ct. 2729.
And in his dissent in Carpenter , Justice Gorsuch equated modern digital data to founding-era property interests under the Fourth Amendment. He explained that the Court's role is not limited to "protecting only the specific rights known at the founding; it means protecting their modern analogues too." Carpenter , 138 S.Ct. at 2271.
Here the court must determine whether a witness testifying by two-way video conference satisfies the demands of the Sixth Amendment. The factfinder would see the witness, the witness would be subject to cross examination, and the witness could see the defendant. Yet allowing two-way video conferencing would mean that the witness is not physically present in the courtroom, depriving the defendant of the right to in person, face-to-face confrontation. These are two requirements critical to the right of confrontation at common law. And thus like in Kyllo , the court must consider "what limits [are there] upon this power of technology to shrink the realm of" protections guaranteed by the Confrontation Clause? 533 U.S. at 34, 121 S.Ct. 2038.
The Supreme Court's decisions involving the interaction of new technology to a right that "comes to us on faded parchment," California v. Green , 399 U.S. 149, 174, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring), show that courts must insist on maintaining the protective force of the liberty interest at stake when they are confronted with new technologies. Given that the original public meaning of the Confrontation Clause included, generally, a right to in person, face-to-face confrontation of witness, it would be inappropriate to deny Rivera this right unless a recognized exception to the right justified doing so. This conclusion *315 remains true regardless of how similar video conferencing is to live testimony. If it cannot preserve the core of the right protected by the Confrontation Clause, it is inadequate. The Government has not shown that any exception to the right to confrontation that was recognized at the time of the Amendment's ratification applies here. Thus the court cannot approve of the witness testifying by video conference.
Cases interpreting the Confrontation Clause from the Supreme Court and several courts of appeal also show that courts may only excuse a witness from testifying in person at trial in limited circumstances not present here.
The Supreme Court's decisions[2] in Coy v. Iowa and Maryland v. Craig , which address the Confrontation Clause's requirement of physical, face-to-face cross-examination, provide guidance on the issue before the court. In Coy , the accused had to confront the witnesses against him with a screen between them that "blocked [the witnesses] from [the accused and fact-finder's] sight." 487 U.S. 1012, 1014, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The Court noted that the "Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Id. at 1016, 108 S.Ct. 2798. Thus, given that the screen blocked the view of the witnesses faces, the Court held that without an exception "firmly... rooted in our jurisprudence" or "further[ing] an important public policy" the screen could not be placed between the accused and the witnesses without violating the face-to-face confrontation right of the Sixth Amendment. Id. at 1020-21, 108 S.Ct. 2798.
Two years later in Craig , the Supreme Court found that there were circumstances when a court could, consistent with the Confrontation Clause, allow a witness to testify outside the defendant's physical presence. In that case a child sex abuse witness testified from outside the courtroom using a one-way closed-circuit television. 497 U.S. 836, 840, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In assessing whether this procedure complied with the Sixth Amendment, the Court identified four aspects of witness confrontation that ensures the reliability of evidence through "rigorous adversarial testing[.]" Id. at 846, 110 S.Ct. 3157. These elements were "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact[.]" Id. at 846, 110 S.Ct. 3157.
But while the Supreme Court recognized the importance of a witness's physical presence, it found that the Constitution did not require physical presence in every circumstance. Id. at 852, 110 S.Ct. 3157. Although the requirement for in person testimony "may [not] easily be dispensed with[,]" courts may excuse a witness from testifying in person only where the witnesses' absence is "necessary to *316 further an important public policy and only where the reliability of the testimony is otherwise assured." Id. at 850, 110 S.Ct. 3157.
The Supreme Court concluded that the circumstances present in Craig satisfied both elements. Testimony by remote video still allowed the witness to be placed under oath, allowed for cross examination, and enabled the factfinder to observe the witness's demeanor. Id. at 851, 110 S.Ct. 3157. Thus, the process "adequately ensure[d] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." Id. And the Court also found that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." Id. at 854, 110 S.Ct. 3157. Thus, the Court concluded that allowing the witness to testify by video did not violate the Confrontation Clause.
But even after Coy and Craig , there is still a dispute in the Courts of Appeal about the standard to apply to determine whether two-way video conferencing complies with the Confrontation Clause.
On one hand there is the Second Circuit's opinion in United States v. Gigante , 166 F.3d 75 (2d Cir. 1999), where the court adopted an "exceptional circumstances" test for remote video testimony. The court of appeals claimed that Craig was not binding because that case involved a "standard to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant[,]" and the case before it involved "a two-way system that preserved the face-to-face confrontation celebrated by Coy [.]" Id. at 81. The court also focused on the provision of the Federal Rules of Criminal Procedure that allow parties to obtain a witness's testimony through deposition and present it at trial when exceptional circumstances are present and the court considers it in the interest of justice to do so. Id. at 81 (quoting Fed. R. Cr. P. 15(a) ). Given that the court "could have admitted [the witness's] testimony pursuant to Rule 15 without offending the confrontation clause" the court of appeals considered it appropriate to allow two-way video testimony. Id.
On the other hand, several Courts of Appeal have closely followed the Craig standard. For example, the Eleventh Circuit has rejected Gigante 's reasoning in favor of the two-part test laid out in Craig . United States v. Yates , 438 F.3d 1307, 1312-14 (11th Cir. 2006) (en banc). It found the one-way/two-way distinction to be unpersuasive and found that Craig applied to two-way video conferencing. Id. at 1313. And it has noted that at least four other circuits (the Eighth, Sixth, Ninth, and Tenth) have reached a similar conclusion. Id. at 1313.
The court finds the reasoning of the Eleventh Circuit and the other courts that have relied on Craig to be persuasive. Craig maintains the defendant's right to confront his accuser in person, subject only to a narrow exception. This standard is also more protective of the right at the core of the Confrontation Clause than the Second Circuit's exceptional circumstances test. Thus, the court will consider whether the Government has satisfied the two-factor Craig test.
Even if the court were to presume that the two-way nature of the video conference would assure the reliability of the witness's testimony, the Government has not shown that excusing the witness from appearing in person is "necessary to further an important public policy[.]" Craig , 497 U.S. at 850, 110 S.Ct. 3157. Instead, it relies on the inconvenience to the witness of traveling to Raleigh from Hawaii a second *317 time. This inconvenience does not rise to the level of an important public policy that justifies depriving the witness of her Sixth Amendment right to confront, in person, a witness against her. Thus, while the court acknowledges that travel can be inconvenient to witnesses, the Government has failed to show how avoiding such inconveniences furthers "an important public policy," and therefore the Government's motion is denied. Craig , 497 U.S. at 850, 110 S.Ct. 3157.
III. Conclusion
As the Supreme Court has noted, "[i]t is a truism that constitutional protections have costs." Coy , 487 U.S. at 1020, 108 S.Ct. 2798. Here, enforcing the Confrontation Clause will impose costs and inconvenience on the Government and its witness, despite their lack of any responsibility for the need to reschedule the bench trial. But this inconvenience does not outweigh the costs to the defendant and the Constitution of diminishing her right to confront her accuser in person at trial. The court therefore denies the Government's Motion for Government Witness to Appear by Video Teleconference.

The court previously entered a text order informing the parties that the motion would be denied and that a written order would follow. Mar. 18, 2019 Order.

The court also notes that in 2002 the Supreme Court rejected an amendment to the Federal Rules of Criminal Procedure, Proposed Rule 26(b), that would have allowed confrontation by two-way video transmission under the same standard that allows deposition of an unavailable witness to be read into evidence pursuant to Rule 15. 207 F.R.D. 89, 92-99 (2002). According to Justice Scalia, the rejection of the amended rule was based on the "dubious constitutionality" of the proposed new rule under the Court's decision in Craig . Id. at 93-94. Justice Scalia's statement accompanying the rejection stated Craig 's recognition that "a purpose of the Confrontation Clause is ordinarily to compel accusers to make their accusations in the defendant's presence -which is not equivalent to making them in a room that contains a television set beaming electrons that portray the defendant's image."Id. at 94. "Virtual confrontation," he stated, "might be sufficient to protect virtual constitutional rights; I doubt whether it is sufficient to protect real ones." Id.