[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-13899

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DIANELIS MOLINA NODA,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20087-CMA-1

————————————————

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

A jury convicted Dianelis Molina Noda ("Noda") for defrauding her former employer, Greentree, Inc., by diverting payroll direct deposits issued in the name of former Greentree employees into her personal bank accounts. She received a 70-month total sentence for five counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). She now appeals, alleging three enumerations of error. First, she argues that the district court violated her Sixth Amendment right to confront her accusers when it permitted COVID-19-positive witness Christopher Martin to testify by video. Second, Noda contends that the district court abused its discretion when it denied her COVID-19-based continuance requests, which she alleges led to the violation of her confrontation rights. Third, she maintains that her sentence is substantively unreasonable. Because Noda is not entitled to relief on any of her claims, we affirm her convictions and sentence.

## I.    Background

### A. *Procedural History*

A grand jury indicted Noda with five counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1 through 5), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 6 and 7).

At a status conference in June 2021,[1] Noda requested an August 2021 trial date, in part because she was pregnant and an August trial would not interfere with the birth of her child, who was due in late September 2021.  The district court set trial for the two-week trial period beginning on August 16, and informed the parties that pretrial motions were due by July 12, 2021.  On July 22, Noda moved to continue the trial, requesting a 30-day continuance "to allow sufficient time for defense counsel to fully review the discovery provided and allow defense counsel to fully investigate any other circumstances of the case."  The district court denied the motion, explaining that the motion had failed to show good cause for an additional extension.  On August 6, Noda filed a "Notice of Trial Conflict," informing the district court that her counsel had another trial scheduled to begin the same day as Noda's trial.  In response, the district court reset the trial date for August 23.

During a calendar call hearing four days later, Noda again requested a continuance.  As relevant to this appeal, she argued that a continuance was necessary because it was "too much of a risk to put a pregnant woman on trial" given the COVID-19 surge in Miami-Dade County.  Noda acknowledged that, despite the pandemic, she was working in person at a law office in Miami at the time.  The district court denied Noda's continuance request

---

[1] Noda's trial was initially set to begin in March 2021.  A date was set for a change-of-plea hearing three times before Noda informed the district court that she would not be changing her not guilty plea.

again, explaining that COVID-19 safety protocols would be in place, including face mask and social distancing requirements. The district court also reset trial for August 19.

On August 13, Noda filed a motion requesting a 90-day continuance, again citing the risk of COVID-19 infection and illness. The district court denied the motion, explaining that the trial was expected to last only four days, that safety procedures like masking and social distancing were in place, and that the trial would occur in a courtroom retrofitted with COVID-19 safety measures. That same day, Noda moved to compel negative COVID-19 tests for all witnesses and trial participants, to be taken within 48 hours of their anticipated presence inside the courtroom. The district court denied the motion.

Three days later, Noda filed motions for clarification regarding the district court's COVID-19 safety protocols. The motions also sought to discover the vaccination status of government witnesses and to preclude unvaccinated witnesses from testifying, among other *voir dire* and COVID-19-related requests. The district court denied all Noda's motions. The next day, Noda filed another COVID-19-related continuance motion, requesting a trial date in early November 2021. The district court struck this motion as unauthorized and untimely, noting that the motion was "repetitive of earlier [m]otions, disrespectful to the Court, and filled with histrionics." The district court explained:

> Defendant ultimately seeks to persuade the Court to
> postpone the trial in this case until the COVID-19

pandemic concludes.  This, the Court will not do, particularly when several jury trials have already been safely conducted in this District, following a process designed to bring in a fair cross-section of the community.    While the Court is mindful of Defendant's concerns, numerous safety measures have been implemented, including mandatory temperature checks upon entrance to the courthouse, required masking and social distancing, plexiglass and glass dividers throughout the courtroom, the placement of three Intellipure air purifiers with UV lights inside the courtroom, the periodic cleaning of surfaces during trial, and the use of disposable microphone covers.  Defendant and her counsel have made no effort to visit and examine the retrofitted courtroom where a safe, socially distanced trial will be conducted, despite the Court's invitation they do so; in contrast, the prosecutors have visited that courtroom to familiarize themselves with the setting and its safety features.

Trial began a few days later.

B.  *Factual Background*

During a four-day jury trial, the government presented testimony from eleven witnesses.  The testimony established that Noda worked in the office of Greentree, Inc.—a landscape maintenance company in south Florida—and that Noda was responsible for processing payroll.  Noda input the hours that each employee worked on a weekly basis, entered each employee's bank

account information into the payroll system, and updated the system if an employee quit.  Greentree also kept physical personnel files with current and former employees' personal identifying information, date of hiring, and date of termination.  Because of her job duties related to payroll, Noda had access to these files.

In March 2019, while Noda was absent from work, another employee who was sorting the payroll checks discovered pay stubs for former employees who no longer worked at Greentree.  The bank account listed for these former employees was the same bank account that Noda used to receive her personal paycheck.  Research into the matter revealed that, starting in August 2018, numerous ex-employees had received paychecks after they had been terminated and that these paychecks had been deposited into Noda's bank accounts.[2]   Neither Greentree nor the former employees authorized these deposits, and they did not give Noda permission to use the employees' personal identifying information.

An FBI forensic accountant testified that, in February 2019 alone, Noda received deposits from Greentree totaling more than her annual salary.[3]   And Noda's spending habits reflected her

[2] Ultimately, the investigation revealed that 20 former employees' identities were used to initiate around 300 direct deposits into Noda's bank accounts between August 2018 and March 2019.  In total, a little over $200,000 was withdrawn from Greentree's bank account as a result of the transactions.

[3] Noda's annual salary was $29,000.

increased income—from August 2018 to March 2019, Noda spent more than $178,000.

As relevant to the issues on appeal, on the second day of trial, which fell on a Friday, Christopher Martin, an investigative security agent with Greentree's payroll company, ADP, testified. He explained that ADP processed multiple direct deposit checks that went into a bank account in Noda's name.

The third day of trial was a Monday. That morning, Noda's counsel moved for a mistrial on the basis that the government had withheld exculpatory evidence. Noda's counsel explained that, over the weekend, the government told him that it had evidence of an online chat thread exchanged between ADP and a Greentree employee named "Cristi" on November 28, 2018. The government explained that it just learned of these communications from Martin, who had testified on Friday, and offered to recall him as a witness. The district court denied the motion for mistrial. The government then alerted the court that Martin had tested positive for COVID-19 over the weekend. In response to the suggestion that Martin testify by video, Noda's counsel made a Sixth Amendment Confrontation Clause objection. After hearing from the parties, the district court overruled Noda's objection, reasoning that Noda's "confrontation rights [would] not be[] violated" by Martin's appearance by video "in light of [his] COVID positive status" and "because he ha[d] previously testified . . . in open court in the presence of [Noda]."

Martin then testified by video about the chat messages that occurred between someone at Greentree and an ADP representative on November 28, 2018. In the exchange, a person using the Greentree account—which appears under the username "Cristi"—asked an ADP representative if some of the Greentree employees could receive their pay stubs in an electronic, paperless format.[4] The ADP representative responded that, "[t]he only way to do this . . . [was to] make all pay stubs available online." "Cristi," the Greentree user, responded and stated that she wanted this paperless option for only certain employees. After the ADP representative replied, "[t]here is no way to only do this for specific employees, I apologize," the Greentree user wrote back, "Okay. Thanks anyway," and left the chat. Noda's counsel then conducted cross-examination.

At the end of trial, the jury found Noda guilty on all counts.

Before Noda's sentencing, a probation officer submitted a presentence investigation report ("PSI"), which calculated Noda's advisory guidelines range as 61 to 70 months' imprisonment.[5] In

---

[4] Martin explained that the Greentree username appeared as "Cristi" on the chat function because that was the name listed as the user agent and owner of the Greentree account. Accordingly, there was no way to know who was actually writing the messages.

[5] Noda's advisory guidelines range for Counts 1–5 was 37 to 46 months' imprisonment and Counts 6 and 7 carried a mandatory consecutive term of 24 months' imprisonment, which resulted in a final advisory guidelines range of

her sentencing memorandum, Noda argued that "a guideline prison sentence is the appropriate sentence" and that an upward variance was not warranted. She also argued that a sentence between 61 and 70 months "would be sufficient taking into account the sentencing factors under § 3553(a)."

At the sentencing hearing, after resolving Noda's objections to the PSI, the district court agreed with the PSI's calculation of the guidelines range. The government requested a total sentence of five and a half years (or 66 months). Noda argued that "[t]his is not a case that deserves anything above the guidelines" and that the district court should not consider an upward variance. Noda's counsel stated:

> [Sixty-six] months, I think as the Government has asked for, that would be a reasonable sentence. [Seventy] months is the top of the guidelines. I've advised my client that there's a high likelihood she might get 70 months. But I don't think anything more than that is deserved. This is not a case that falls outside of the normal fraud.

Noda again reiterated that "under the [§] 3553(a) factors, we believe a guideline sentence is appropriate in this case" and that Noda was "asking for a guideline sentence."

---

61 to 70 months' imprisonment. She faced a statutory maximum term of 20 years' imprisonment.

Ultimately, the district court sentenced Noda to 70 months' imprisonment to be followed by three years' supervised release. It explained that a sentence at the top end of the guidelines range was appropriate in light of the 18 U.S.C. § 3553(a) factors. In particular, the court emphasized the "shocking" nature and circumstances of the offense and Noda's continued failure to accept responsibility at sentencing. This appeal followed.

## II.    Discussion

### A.  *Whether Noda's Sixth Amendment Right was violated*

Noda argues that the district court erred by allowing Martin to be recalled as a witness and testify by video over Noda's Confrontation Clause objection.

"[W]e review *de novo* [a defendant's] claim that [her] Sixth Amendment rights were violated." *United States v. Yates*, 438 F.3d 1307, 1311 (11th Cir. 2006) (*en banc*).

The Sixth Amendment's Confrontation Clause "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quotations omitted). In general, this clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Yates*, 438 F.3d at 1312 (quotations omitted).

The harmless error doctrine applies to violations of the Confrontation Clause. *Van Arsdall*, 475 U.S. at 684. When determining whether a Confrontation Clause error is harmless, we

analyze several factors, including: (1) "the importance of the witness['s] testimony in the prosecution's case"; (2) "whether the testimony was cumulative"; (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points"; (4) "the extent of cross-examination otherwise permitted"; and (5) "the overall strength of the prosecution's case." *Id.*

Here, even assuming that the district court erred by permitting Martin to testify by video, such error was harmless. Noda protests that the admission of Martin's video testimony was not harmless because the "government needed to prove that [] Noda was in the office on . . . November 28, 2018," because it was a Thursday—the day payroll was processed. She contends that her absence from work on November 28, 2018, could mean that "the fraud would have been discovered much earlier, or could have involved another party."[6]

Turning to the *Van Arsdall* factors, Martin's video testimony was undisputed, cumulative, and of minimal value to the prosecution's robust case against Noda. Indeed, Noda admits as much on appeal. In her brief, Noda states that "the government

---

[6] Noda's presence or absence in the office on November 28, 2018, is irrelevant to Noda's ultimate guilt for the crimes for which she was charged. Noda provides no argument or explanation about how her absence on that day would be exculpatory. And even if her absence meant that her fraud would have been discovered earlier or suggested that she had an accomplice—as she argues—those facts do not negate Noda's culpability.

did not have a true 'need' for [Martin's] testimony, because it was clear that other witnesses could have offered the same evidence." Noda also states that "there is no indication that [Martin] had any unique, specialized knowledge or expertise about the evidence." Additionally, Noda was permitted to cross-examine Martin at length. Considering the government's robust case against Noda— which included testimony from numerous witnesses that Noda alone was responsible for payroll, that paychecks in the names of former employees were deposited into Noda's bank accounts, and that Noda spent significantly more than her annual salary during the relevant time period—we conclude that any error in permitting Martin to testify by video was harmless.

B. *Whether the district court abused its discretion by denying Noda's request for continuances*

Noda explains that the basis for each of her motions for continuance "was the ongoing COVID pandemic and the fact that [she] was pregnant and not vaccinated." She argues that she was prejudiced by the district court's refusal to grant her motions for a continuance of trial because it resulted in a violation of her Sixth Amendment right to confront her accuser when Martin was permitted to testify by video on the third day of trial due to his COVID-19 positive status, as discussed above.

"Trial courts are afforded 'great latitude' with respect to scheduling, and judges enjoy 'broad discretion' in ruling on motions for continuances." *United States v. Pendergrass*, 995 F.3d 858, 870 (11th Cir. 2021). Consequently, "[w]e review for abuse of

discretion a district court's denial of a motion to continue trial, and the denial of such a request does not rise to error unless it is arbitrary and unreasonable and severely prejudices the moving party." *Id.* (quotations omitted).

Here, the district court did not abuse its discretion when it denied Noda's continuance requests because those denials did not prejudice her. As discussed above, even if the district court erred by allowing Martin to testify by video, such error was harmless. Thus, in the absence of any showing of prejudice to Noda, the district court did not abuse its discretion by denying her motions for continuance. *Id.*

C. *Whether Noda's sentence is substantively reasonable*

Noda argues that the district court's sentence of 70 months' imprisonment was substantively unreasonable considering the circumstances of this case and her personal history and characteristics.

We review a sentence for substantive reasonableness under a deferential abuse of discretion standard, asking whether a sentence is substantively reasonable in light of the totality of the circumstances. *See Gall v. United States*, 552 U.S. 38, 52 (2007). The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from

future criminal conduct.  18 U.S.C. § 3553(a).  The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6).  Importantly, the weight given to a particular § 3553(a) factor "is committed to the sound discretion of the district court," and the district court is not required to give "equal weight" to the § 3553(a) factors.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (quotations omitted).

The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.*  We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotations omitted).

Noda failed to show that the district court abused its discretion in imposing a substantively unreasonable sentence.  The district court considered the § 3553(a) factors and explained why a sentence at the top of the guidelines range was appropriate given the "shocking" nature of the offense and the fact that Noda continued not to accept responsibility or show any remorse at the

21-13899                Opinion of the Court                15

sentencing stage.[7]   Although she quarrels with the way that the
district court weighed the various factors, the weight to be
accorded any given § 3553(a) factor is a matter committed to the
sound discretion of the district court.  *Rosales-Bruno*, 789 F.3d at
1254 (quotations omitted).

Moreover, Noda's total 70-month sentence is within the
applicable guidelines range and is below the statutory maximum of
20 years' imprisonment, which are both indicators of
reasonableness.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir.
2008) ("Although we do not automatically presume a sentence
within the guidelines range is reasonable, we ordinarily expect
[such a sentence] . . . to be reasonable." (alteration adopted and
quotations omitted)); *United States v. Gonzalez*, 550 F.3d 1319,
1324 (11th Cir. 2008) (explaining that a sentence that is below the
statutory maximum is another indicator of reasonableness).

---

[7] Although Noda argues that the district court penalized her for exercising her
right to trial, her argument is not supported by the record.  At sentencing, it is
true that the district court commented that Noda's case was "very unusual"
because she made the government prove its case at trial even though "the
evidence was so overwhelming" and even at sentencing she "still [did] not
accept responsibility for her theft and her identity theft."  However, the district
court then explained that a sentence at the top of the guidelines range was
warranted based on the nature and circumstances of the offenses and Noda's
failure to accept responsibility even after being confronted with the
overwhelming evidence and her lack of remorse—"personal characteristics
that cr[ied] out" for a top of the guidelines sentence.  Thus, contrary to Noda's
argument, the district court did not improperly base her sentence on the fact
that she went to trial.

16                    Opinion of the Court                    21-13899

Accordingly, we conclude that her sentence is substantively reasonable.

### III.    Conclusion

Because Noda is not entitled to relief on any of her claims, we affirm her convictions and sentence.

**AFFIRMED.**